UNITED STATES of America,
Plaintiff-Appellee,

v.

Harold McMAHON, Defendant-Appellant.

No. 78–5292.

United States Court of Appeals,
Fifth Circuit.

April 6, 1979.

Carl H. Green, El Paso, Tex. (Court-appointed), Harold McMahon, pro se, for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, James W. Kerr, Jr., Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GEWIN, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Harold McMahon appeals from his conviction for conspiracy to transport aliens within the United States in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(2), alleging that the trial court committed reversible error in admitting into evidence his prior misdemeanor conviction for aiding and abetting an alien to elude examination. We affirm.

I.

The thrust of the government's case against appellant was that he had hired two coconspirators, Randolph Barboa and Armando Avilucia, to transport aliens for him from El Paso, Texas, to various points in New Mexico. Barboa was to take a load of aliens to Albuquerque, but was arrested on January 13, 1978, while making his first run for appellant; subsequently, he pled guilty to the charge of transporting illegal aliens. Avilucia, instructed by appellant to take aliens to Los Lunas, was more successful in his exploits; he made five successful "hauls" until he was arrested on his sixth such trip on March 28, 1977. Avilucia pled guilty and was convicted of transporting illegal aliens, but the government allowed him to withdraw his plea of guilty and dismissed the indictment against him in return for his agreement to testify against appellant.

Following an appearance by appellant before a federal Grand Jury on November 17, 1977, a one-count indictment was returned charging him with the offense of conspiring to transport aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(2). This indictment was amended on December 1, 1977, to allege two additional counts of making false statements to the Grand Jury in violation of 18 U.S.C. § 1623. The conspiracy count was severed from the remaining

counts and on December 12–13, 1977, appellant was tried and convicted for conspiracy to transport aliens within the United States. Appellant was sentenced to serve five years' imprisonment.

## II.

■ During its case in chief, the government tendered into evidence appellant's prior misdemeanor conviction for aiding and abetting an alien to elude examination.[1] Defense counsel objected,[2] but the district court ruled the evidence admissible under Fed.R.Evid. 404(b) as tending to show defendant's intent to participate in the conspiracy with Barboa and Avilucia.

This case is controlled by our recent decision in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), in which we discussed the admissibility of past offenses to prove intent. Under *Beechum*, extrinsic offense evidence is admissible if it satisfies a two-tier test. First, the trial court must determine that "the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense." *Id.* at 913. Second, the court must find that the incremental probative value of the extrinsic offense evidence is not " 'substantially outweighed by the danger of unfair prejudice' " to the defendant. Fed.R.Evid. 403; *United States v. Beechum*, 582 F.2d at 914. The resolution of these questions of admissibility is committed to the sound discretion of the trial judge. 582 F.2d at 915. Judging the admissibility of appellant's prior conviction in light of the *Beechum* two-part test, we cannot say that the trial judge abused his discretion in admitting the evidence under Fed.R.Evid. 404(b).

■ The first prong of the *Beechum* test is clearly satisfied in this case. The similarity in intent required between the extrinsic and charged offenses only means that the defendant "indulg[e] himself in the same state of mind in the perpetration of both . . . offenses." 582 F.2d at 911. Appellant's extrinsic offense was a misdemeanor conviction for aiding and abetting an alien to elude examination, a reduced charge of transporting illegal aliens. Engaging in the transportation of illegal aliens requires the defendant to possess the same "state of mind" as agreeing with others to do the same thing.[3] Certainly proof of the defendant's intent to commit the earlier extrinsic offense makes it more likely that he intended to conspire with Barboa and Avilucia to transport illegal aliens. *See United States v. Barnes*, 586 F.2d 1052, 1057–58 (5th Cir. 1978); *United States v. Beechum*, 582 F.2d at 911. Moreover, it is undisputed that appellant committed the extrinsic offense.

We find that the second part of the *Beechum* test has also been satisfied here. Before the district judge may exclude extrinsic offense evidence, he must find that the danger of unfair prejudice *substantially outweighs* the incremental probative value of the evidence. This weighing process calls for a "common-sense assessment of all the circumstances surrounding the extrinsic offense." *United States v. Beechum*, 582 F.2d at 914.

■ First, we must look to the incremental probative value of the evidence. Probative value in this context is ascertained by examining a variety of factors: (1) the

---

1. McMahon was originally charged with transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(2), but through an arrangement with the U.S. Attorney's Office, the charge was reduced to aiding and abetting an alien to elude examination in violation of 8 U.S.C. § 1325. McMahon pled guilty to the reduced charge and received a suspended sentence with three years' probation.

2. Defense counsel did not specify the reason for his objection.

3. " '[C]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself.' " *Ingram v. United States*, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959), *quoting* Note, *Developments in the Law—Criminal Conspiracy*, 72 Harv.L.Rev. 920, 939 (1959). *See also United States v. Evans*, 572 F.2d 455, 469 (5th Cir.), *cert. denied sub nom. Tate v. United States*, —— U.S. ——, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

availability of other evidence to establish the defendant's unlawful intent; (2) the similarity between the extrinsic and charged offenses; (3) the degree of proximity in time between the extrinsic and charged offenses; and (4) the posture of the case at the time the extrinsic offense evidence is proffered. 582 F.2d at 914–15. The lack of convincing evidence in the government's case pertaining to intent and the close resemblance between the extrinsic and charged offenses convinces us that probative value outweighs potential prejudice in this case.

Appellant reluctantly argues that the government "without question presented convincing evidence of the defendant's guilt" and that therefore the evidence of appellant's prior conviction was unnecessary to the government's case. Based upon our review of the evidence as developed on the record as a whole, we find that the government's case was in substantial need of objective evidence tending to prove appellant's intent to become involved in the conspiracy with Avilucia and Barboa.

The government's case consisted primarily of the testimony of the two coconspirators. Barboa testified that he received a telephone call from appellant during the evening on January 12, 1977, asking him to come over to appellant's house to discuss something important. At the meeting appellant supposedly offered Barboa "one hundred dollars a head" to transport aliens from El Paso on the following day. Barboa was initially reluctant to accept the offer, but after his fears were assuaged by appellant's assurances that he would not get caught, he agreed to make the trip. According to Barboa's testimony, appellant drew Barboa a map so that he would be able to evade the border patrol checkpoints; additionally, he told Barboa the motel and room number where the aliens would be located in El Paso. Appellant wanted to register the van which would be used to transport the aliens in Barboa's name, and Barboa agreed. Barboa was accompanied on his visit to appellant's house by his girl-friend, Cathy Adams, whose testimony corroborated the material aspects of Barboa's story.

Appellant took the stand and denied hiring Barboa to transport aliens or even talking to him on the evening of January 12, 1977; according to appellant, he was not living with his wife during the month of January. He also denied drawing the map to assist Barboa in evading the checkpoints. Kathy McMahon, appellant's estranged wife and also Barboa's sister, testified that when Barboa and his girlfriend came over to her house on January 12 appellant was not there; she verified appellant's testimony that the two of them were not living together in January.

Avilucia testified that he was first approached by appellant in February of 1977 in the Drift-In Lounge in Albuquerque, while he was doing some carpentry work there. Appellant offered to hire Avilucia to transport aliens for him; if Avilucia would agree, appellant would pay Avilucia approximately $1,000 in cash for each run, and would allow him simultaneously to purchase the van he was driving on these trips by crediting the remainder of the payment due him against the purchase price of the van. Avilucia testified that the van he was purchasing from appellant was actually registered in Barboa's name, but that appellant forged Barboa's signature in signing over the van to Avilucia. In the office of the Lounge, appellant drew Avilucia a map because he was unfamiliar with the terrain around El Paso; after appellant had drawn this map, he remembered that there was a printed map in the drawer of the desk in the office, so he removed the map and outlined a route for Avilucia to follow. Avilucia also implicated appellant's wife in the transportation scheme, testifying that on several occasions he would meet her with the load of aliens.

Appellant denied talking to Avilucia in the Drift-In Lounge or hiring him to transport aliens; to support his testimony, appellant asserted that he did not manage the

Drift-In Lounge until August of 1977, so he would have no occasion to be present at the Lounge in February of that year and certainly would not have access to the office at that time. Likewise, appellant denied drawing the map presented by Avilucia or selling the van to him. Kathy McMahon, in her testimony, denied any involvement in the conspiracy, and specifically denied having any discussions with Avilucia concerning the transportation of aliens. Her only connection with him was her claim that Avilucia had once kidnapped her and demanded $2,000 from her husband in ransom.

■ As the above summary of the evidence shows, the nature of the government's proof with respect to intent, although adequate, was far from overwhelming; yet the government's case need not be "flimsy" in order to justify admission of the extrinsic offense evidence. *United States v. Barnes*, 586 F.2d 1052, 1059 n.8 (5th Cir. 1978).

Our conclusion that the government's case was in substantial need of evidence bearing upon the issue of intent is prompted by the realization that the offense of conspiracy requires an element of intent or knowledge which is often difficult to prove. *United States v. Evans*, 572 F.2d 455 (5th Cir.), *cert. denied sub nom. Tate v. United States*, ―― U.S. ――, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). *United States v. Adderly*, 529 F.2d 1178, 1180 (5th Cir. 1976). "There must be proof beyond reasonable doubt that a conspiracy existed, that the accused knew of it, and that the accused, with that knowledge, voluntarily became a part of it." *United States v. Gutierrez*, 559 F.2d 1278, 1280 (5th Cir. 1977). Thus, conspiracy cases are unlike other cases where the requisite unlawful intent is inferred from the commission of the criminal act itself. *See United States v. Adderly*, 529 F.2d at 1181; *Fallen v. United States*, 220 F.2d 946, 948 (5th Cir.), *cert. denied*, 350

U.S. 924, 76 S.Ct. 213, 100 L.Ed. 808 (1955). Proving intent becomes especially difficult in cases where the defendant is, as here,[4] a passive participant, *i. e.*, participates in the agreement but does not take part in the substantive offense which is the object of the agreement. *See United States v. Barnes*, 586 F.2d 1052, 1057 (5th Cir. 1978). In such a case, "proof of the defendant's knowledge of and intent to participate in the substantive crime is a primary method of proving his guilt." *Id.*

Here, as in *Barnes*, the government's case was in substantial need of objective facts tending to prove appellant's intent to become involved in the conspiracy. Barboa and Avilucia testified that they were hired to transport aliens for appellant; appellant and his wife denied any such arrangement, and even went so far as to deny meeting with them. The maps allegedly drawn by appellant constituted the only objective evidence of his involvement in the conspiracy, yet the persuasive value of this evidence was significantly undermined by the lack of any convincing proof as to authenticity. Barboa's and Adam's assertion that appellant drew them a map at his home was flatly contradicted by the testimony of appellant and his wife; similarly, Avilucia's testimony that he received two maps from appellant was vigorously denied by appellant himself.

Without the evidence of appellant's prior conviction, the government's entire case thus boiled down to a credibility choice between Barboa, Adams and Avilucia on the one hand and appellant and his estranged wife on the other. Appellant's prior misdemeanor conviction provided objective, undisputed and highly probative evidence of appellant's intent and involvement in the conspiracy. Moreover, the probative worth of appellant's prior conviction was enhanced by the close similarity between the charged and extrinsic offenses.[5] Thus, we find the

---

4. Although Avilucia and Barboa testified that appellant hired them to transport illegal aliens, there is no evidence that appellant was engaged in or took part in the actual transportation of aliens.

5. *See* note 3 and accompanying text, *supra*.

incremental probative value of this evidence to be weighty.[6]

■ Appellant urges us to evaluate probative worth in light of the "posture of the case" at the time the extrinsic offense was proffered; he argues that the incremental probative value of the prior conviction was nil at the time it was introduced because, at that time, the defendant had not placed his intent in issue. In this regard, appellant asks us to adopt the rule of *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975), which holds that a plea of "not guilty" does not make intent a genuinely contested issue and therefore bars introduction of the extrinsic offense in the government's case in chief. We need not reach this issue.[7] As we noted in *Beechum*, the posture of the case at the time of the introduction of the extrinsic offense may be important in determining probative value *because it may not be certain*, at the commencement of trial, that the defendant will contest the issue of intent. *United States v. Beechum*, 582 F.2d at 915. But where it is evident at the outset that intent will be an issue at trial, we have held that admission of the extrinsic offense in the government's case in chief does not constitute grounds for reversal. *United States v. Adderly*, 529 F.2d at 1182. Under the circumstances of this case—where appellant, prior to trial, appeared before the Grand Jury and denied hiring Barboa and Avilucia to transport aliens—appellant's defense could be anticipated and it was clear that intent would be an issue at trial. Moreover, appellant "waived any objection he might have had to the Government's order of proof when he took the stand" and denied his intent to become involved in the conspiracy. *United States v. Beechum*, 582

F.2d at 915–16; *see also United States v. Barnes*, 586 F.2d 1052, 1058 (5th Cir. 1978); *United States v. Urdiales*, 523 F.2d 1245, 1247 (5th Cir. 1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373 (1976).

Nor do we feel that the introduction of appellant's prior conviction was *unfairly* prejudicial to him in this case. *See* Fed.R. Evid. 403. The introduction of the prior offense undoubtedly prejudiced appellant's case, but not *unfairly* so. Appellant's misdemeanor conviction was not of a heinous nature, likely to incite the jury to an irrational decision. It did not constitute cumulative evidence, nor did its introduction into evidence tend to confuse the issues, mislead the jury or cause undue delay. Moreover, any potential unfair prejudice was minimized in this case by the trial court's appropriate[8] limiting instruction to the jury. Thus we uphold the admission of appellant's prior conviction because the incremental probative value of the evidence was not substantially outweighed by the potential for unfair prejudice. *See United States v. Barnes*, 586 F.2d 1052 (5th Cir. 1978); *United States v. Zimeri-Safie*, 585 F.2d 1318 (5th Cir. 1978); *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc).

### III.

■ Appellant also complains of the trial court's instruction to the effect that the jury could consider his misdemeanor conviction for purposes of impeachment. The trial judge properly instructed the jury that they could consider appellant's prior conviction for the purpose of showing intent. During the course of this instruction, how-

6. The amount of time between the extrinsic and charged offenses—approximately three years in this case—is not so great as to diminish the probative value of appellant's prior conviction. *See United States v. Beechum*, 582 F.2d at 915.

7. This question has been reserved by our prior decisions. *See United States v. Beechum*, 582 F.2d at 915; *United States v. Adderly*, 529 F.2d 1178, 1181–82 (5th Cir. 1976); *United States v. Urdiales*, 523 F.2d 1245, 1247 (5th Cir. 1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373 (1976).

8. Appellant argues that it was error to instruct the jury to consider his prior conviction to show intent. The sole premise for this argument is appellant's erroneous conclusion that the evidence of the prior conviction was inadmissible under Fed.R.Evid. 404(b). As we have already demonstrated, this evidence was properly admitted. Hence, the trial court's instruction was proper.

ever, the trial judge—inadvertently, we feel—instructed the jury that they could alternatively use the conviction for purposes of impeachment. This instruction was improper, and the government conceded as much at oral argument. *See* Fed.R. Evid. 609(a). Nonetheless, appellant did not object to the instruction at trial. "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto . . . ." Fed.R.Crim.P. 30. Accordingly, appellant must demonstrate that the instruction constituted plain error in order to obtain a reversal. Fed.R. Crim.P. 52(b); *United States v. Willis*, 559 F.2d 443 (5th Cir. 1977).

Viewing the charge as a whole, we do not feel that the trial court's instruction on impeachment rises to the level of plain and fundamental error; appellant has failed to establish that the instruction was so prejudicial as to affect his substantial rights.

AFFIRMED.