**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bryan ROBERTS, a/k/a Sailor Roberts, Defendant-Appellant.**

No. 79–5451.

United States Court of Appeals, Fifth Circuit.

June 16, 1980.

John R. Lee, Kermit, Tex., Victor R. Arditt, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN and POLITZ, Circuit Judges, and SMITH *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

Bryan Roberts was convicted after a jury trial of conspiracy to operate an illegal gambling business, 18 U.S.C. § 371, operating such a business, 18 U.S.C. § 1955, and failure to file a special tax return with the Internal Revenue Service before receiving wagers on sporting events, 26 U.S.C. § 7203. He seeks reversal on the grounds that the district judge erroneously refused to suppress evidence seized at his apartment and improperly admitted evidence of a prior conviction. Because we find both contentions to be without merit, we affirm.

## I.

■ Deputy sheriffs arrived at Bryan Roberts's El Paso, Texas apartment to execute a search warrant issued by a state judge. The warrant authorized search for a stolen television set. After Roberts answered the officers' knock at the door of his apartment, they entered the apartment where they discovered the stolen television set and took Roberts into custody.

In the living-dining area of the apartment where they found the television set, the deputies observed two tables upon which telephones, calculators and papers were arranged. After Mr. Roberts was secured, one of the deputies glanced at the tables and noticed a football score sheet next to one of the telephones. This telephone receiver was off the hook; the officer picked it up and said "hello." The party on the line replied, "give me Southern California minus 4." Convinced that they had discovered an illegal gambling operation, the deputies contacted the F.B.I. Federal agents arrived and they joined the local police in seizing evidence of the operation from the tables and from open closets in the living-dining area of the apartment. Roberts's motion to suppress the evidence was denied and much of it was introduced at trial.

It is not disputed that all the evidence sought to be suppressed was in the plain view of the officers as they moved about the apartment while executing the state-issued search warrant. Nevertheless, Roberts contends that, because the officers had to read the papers on the tables before they could determine that he was running a gambling operation, the discovery that the materials were evidence of a crime was made by a search beyond the purview of the "plain view" doctrine enunciated in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

We have held that the seizure of material cannot be justified by the plain view theory when the incriminating or evidentiary character of the material becomes known only after close inspection. *See United States v. Robinson*, 535 F.2d 881, 885–86 (5th Cir. 1976) (opening of brown paper bag and inspection of envelopes inside). *See also United States v. Scios*, 590 F.2d 956 (D.C. Cir. 1978) (en banc) (folder opened and read to determine incriminating character);

* District Judge of the Northern District of Mississippi, sitting by designation.

*United States v. Dichiarinte*, 445 F.2d 126 (7th Cir. 1971) (papers opened and read); *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr. App.1973) (photographic negatives held up to light and examined). *Coolidge* restricts the "plain view" doctrine to "inadvertent" discoveries of evidence by police officers acting within the scope of an otherwise justified intrusion. 403 U.S. at 469–70, 91 S.Ct. at 2040, 29 L.Ed.2d at 585; *United States v. Bolts*, 558 F.2d 316, 320 (5th Cir. 1977), *cert. denied*, 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978). Such careful police examination of the contents of items expands the observation of what was originally in "plain view" into a general exploratory search.

Here, however, the incriminating character of the items seized was apparent to the police officers by casual inspection. A mere glance at the papers on the table revealed a football scoresheet. The appearance of the apartment suggested a business operation. These two facts were enough to give the deputies reason to believe that they had unwittingly discovered a bookmaking operation. Once they were alerted to the existence of the operation, they had probable cause to believe that the items were evidence and, because they were legitimately in a position to seize the evidence, requiring them to obtain a warrant would have been a "needless inconvenience" unrelated to protection of any fourth amendment interests. *See Coolidge*, 403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584.

■ Police officers are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination. Thus, we have held the seizure of address books in plain view valid even though the officer first paged through them because the officer had "recognized that the address books might be of significance before he leafed through them." *United States v. Diecidue*, 603 F.2d 535, 559 (5th Cir. 1979). We also have approved the seizure of weapons discovered in plain view, although the police did not know whether or not the weapons were

properly registered. *See United States v. Bills*, 555 F.2d 1250 (5th Cir. 1977). Because the initial intrusion in this case was justified, and the subsequent observation of the gambling paraphernalia and determination of their character was inadvertent, the seizure was proper under the plain view doctrine.

■ Contrary to defendant's assertions, the decision to communicate with the F.B.I. and await the arrival of federal officers before seizing the evidence does not affect the validity of the seizure. The state officers seized and took custody of the evidence as they would have done regardless of the presence of federal officers. There was no attempt by the state or federal officers to utilize the plain view doctrine to avoid the requirement of obtaining a warrant. *Cf. United States v. Sanchez*, 509 F.2d 886, 889 (6th Cir. 1975) (state warrant to search for narcotics could not be used to validate entrance of federal officer accompanying state police when that officer had probable cause and the opportunity to secure a warrant to search for other contraband, which he subsequently found "in plain view."). In similar circumstances we have held that, after "a lawful intrusion has already occurred and a seizure by a State officer has validly taken place as a result of that intrusion, the invasion of privacy is not increased by an additional officer, albeit a federal officer, who is expert in identifying the type of contraband discovered, [entering] the premises to confirm the belief of the State officer and to take custody of the evidence." *United States v. Green*, 474 F.2d 1385, 1390 (5th Cir.), *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973).

II.

■ During the trial, the government informed defense counsel that it intended, as part of its case in chief, to introduce the defendant's prior conviction of a gambling offense. Defense counsel argued that this evidence should not be admitted unless the defendant raised the issue of intent in his defense. The trial court ruled that Roberts's plea of not guilty itself raised the

issue of intent, thus making this particular prior conviction relevant.

Rule 404(b) of the Federal Rules of Evidence permits the admission of extrinsic offense evidence to prove intent as well as certain other issues. Whether a not guilty plea of itself sufficiently raises the issue of intent to make extrinsic offense evidence admissible in the government's case in chief is a question we have reserved in our previous decisions. *See United States v. McMahon*, 592 F.2d 871, 876 n.7 (5th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979); *United States v. Beechum*, 582 F.2d 898, 915 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *United States v. Adderly*, 529 F.2d 1178, 1181–82 (5th Cir. 1976); *United States v. Urdiales*, 523 F.2d 1245, 1247 (5th Cir. 1975), *cert. denied*, 434 U.S. 1071, 98 S.Ct. 1253, 55 L.Ed.2d 774 (1978). In each of those cases, in contrast to the case now before us, the prosecution had some reason, in addition to the defendant's not guilty plea, to anticipate that the defendant would deny criminal intent. Here the prosecution had no reason to anticipate a denial of criminal intent, and the defendant never openly made it an issue. Thus, the question preserved in our prior cases is now properly before us.

We have established a two-prong test for determining whether extrinsic offense evidence is admissible to prove intent. *See United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). If "the extrinsic offense requires the same intent as the charged offense and . . . the jury could find that the defendant committed the extrinsic offense," *id.* at 913, then "the extrinsic offense evidence is relevant to an issue other than the defendant's character," *id.* at 911, and satisfies the first requisite of *Beechum*. *Beechum* also requires that "the evidence . . . possess probative value that is not substantially outweighed by its undue prejudice . . ." *Id.* We noted in *Beechum* that the second requirement is generally not satisfied when the defendant's intent is uncontested because, in that case, "the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice." *Id.* at 914.[1]

Charges of conspiracy involve considerations not present in other criminal prosecutions. "[T]he offense of conspiracy requires an element of intent or knowledge which is often difficult to prove." *United States v.*

1. Other courts, as we did prior to *Beechum*, analyze the rule 404(b) issue somewhat differently when intent is uncontested, focusing on whether the extrinsic offense evidence can be considered relevant if intent is not contested. *See* Fed.R.Evid. 401 (evidence is relevant when it has "any tendency to make the existence of any fact *that is of consequence* to the determination of the action" more probable than it would be without the evidence. *Id.* (emphasis supplied)). *See e. g., United States v. Powell*, 587 F.2d 443 (9th Cir. 1978) (denial of participation in acts that constitute the crime does not raise intent issue); *United States v. Silva*, 580 F.2d 144 (5th Cir. 1978) (defense of mistaken identity does not raise intent issue; "the materiality of intent depends, not on the statutory definition of the offense, but on the circumstances of the case and on the nature of the defense." *Id.* at 148); *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978) (intent must be *material* issue to satisfy relevancy requirement); *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975) (when requisite criminal intent is readily inferable from the criminal act charged in a case, the fact that a defendant pleads not guilty to the charge against him may not always be sufficient to make intent an issue in the case). In some circumstances the prosecution may be required to await the presentation of the defense case and offer prior crimes evidence in rebuttal if defendant raises the question. Similarly, even before the government rests the nature of the defense may be indicated and may remove intent as an issue.

In *Beechum*, however, we impliedly rejected that approach, noting that "[a]lthough it would seem that the extrinsic offense would be irrelevant if the issue of intent were not contested, the rules apparently deem evidence that has probative force with regard to an uncontested issue to be relevant." 582 F.2d at 914 n.19. We pretermit consideration of whether our obiter dicta en banc are binding on panels, and, even assuming that it is not obligatory, whether the quoted dictum in *Beechum* swept too broadly because, in any event, the intent issue was "of consequence" to the determination of defendant's guilt in the conspiracy count in this case. *See* text, *infra* at ——.

*McMahon*, 592 F.2d 871, 875 (5th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979). Because the prosecution must prove that the defendant knowingly joined a plan to commit a crime, evidence that establishes a defendant's participation in a criminal act, *United States v. Suarez*, 608 F.2d 584 (5th Cir. 1979), or evidence establishing his association with co-conspirators, *Panci v. United States*, 256 F.2d 308 (5th Cir. 1958), may be insufficient to support the inference that the defendant voluntarily joined a conspiracy to commit a crime. Intent is particularly difficult to prove when a defendant is a passive or minor actor in a criminal drama. *See McMahon*, 592 F.2d at 875. If the evidence linking a defendant to a conspiracy is subject to an innocent interpretation, the government may be forced to present some independent evidence of intent to withstand a motion for directed verdict. Moreover, if the government does not present intent evidence in its case in chief the defendant may simply rest and argue lack of intent to the jury without giving the government the opportunity to present such evidence in rebuttal.

█ Unequivocal evidence that a defendant committed a substantive offense may justify the inference that he intended to do so, but it does not plainly support the conclusion that he agreed and planned with others to commit the crime. Evidence of a defendant's association and dealings with a group of conspirators, even when he knows they intend to commit a crime, does not alone show that he himself had the requisite intent to join the conspiracy. *See United States v. Grassi*, 616 F.2d 1295, 1301 (5th Cir. 1980). In every conspiracy case, therefore, a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government. Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he "affirmatively take[s]

the issue of intent out of the case." *United States v. Williams*, 577 F.2d 188 (2d Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978).[2]

Roberts's defense counsel did not, however, affirmatively remove the issue of intent from the case when he raised his motion to exclude the extrinsic offense evidence. He indicated only that he would not actively contest the issue. That alone did not reduce the burden on the prosecution to establish intent, as an element of the offense, beyond reasonable doubt. Indeed, in defense counsel's argument to the jury he took the position that the defendant had not joined the conspiracy, but was merely an employee of the conspirators with no independent interest in the bookmaking operation.

█ Because of the unique nature of conspiracy charges, we cannot apply to them the policy suggested in *Beechum* of uniformly excluding extrinsic offense evidence when the defendant does not actively contest intent. *See* 582 F.2d at 914. It is the district judge's obligation, however, to weigh the probative value of extrinsic offense evidence against its prejudicial effect on the defendant. Fed.R.Evid. 403; *Beechum*, 582 F.2d at 913. At this stage the judge must consider "the extent to which the defendant's unlawful intent is established by other evidence . . . ." *Id.* at 914. *See, e. g., United States v. McMahon*, 592 F.2d 871 (5th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979).

In this case we cannot say that the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice" to the defendant. Fed.R.Evid. 403; *Beechum*, 582 F.2d at 913–14. The prior convictions admitted against Mr. Roberts were for crimes identical to those for which he was on trial. There was little other independent evidence of intent. Proof that

**2.** If, for example, the defendant intends to take the stand and deny any participation in the acts evidencing a conspiracy, he may wish to stipulate that those acts prove intent if his participation is established to the satisfaction of the

jury. Similarly, a defendant who intends to assert a defense based upon mistaken identity may make an appropriate stipulation to avoid the introduction of extrinsic offense evidence.

Mr. Roberts had intentionally joined in a conspiracy to operate a gambling business four years prior to his present participation in such an operation increases the likelihood that he had conspired with others to establish and operate the gambling business. *See United States v. McMahon,* 592 F.2d 871, 873 (5th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979); *see also Beechum,* 582 F.2d at 911–913.

For these reasons, the judgment of conviction is AFFIRMED.