**UNITED STATES of America,**
**Plaintiff-Appellee**

v.

**Jerome P. MERGIST,**
**Defendant-Appellant.**

**No. 83–4457.**

United States Court of Appeals,
Fifth Circuit.

July 26, 1984.

Rehearing Denied Sept. 4, 1984.

Garland, Nuckolls & Catts, Donald F. Samuel, Atlanta, Ga., for defendant-appellee.

Joseph S. Cage, Jr., U.S. Atty., D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before TIMBERS,* POLITZ and RANDALL, Circuit Judges.

---

* Circuit Judge of the Second Circuit, sitting by designation.

1. Lirette's interrogation by the state police was taped and later transcribed. The tape and tran-

**RANDALL, Circuit Judge:**

Jerome Mergist appeals from his conviction of federal drug law violations, asserting two grounds for reversal. First, he contends that the trial court erred in failing to hold an evidentiary hearing on Mergist's motion to suppress certain testimony. He also asserts that the admission of extrinsic offense evidence constituted error. For the reasons set forth below, we affirm.

*I. Factual and Procedural Background.*

For his role in a marijuana smuggling scheme, Mergist was charged in a four-count indictment with conspiracy to import marijuana; importation of marijuana; conspiracy to import marijuana with the intent to distribute it; and possession of marijuana with the intent to distribute it. He was convicted of all counts and sentenced to four concurrent ten year terms, with special parole terms of two and six years on counts two and four, respectively.

At trial, which was to a jury, the evidence included testimony by Reggie Lirette, an accomplice of Mergist's who was involved in the marijuana scheme. Mergist's motion to suppress this testimony was denied without an evidentiary hearing. Two other accomplices also testified, substantially corroborating Lirette's testimony. The government also was permitted, over Mergist's objection, to introduce evidence of Mergist's 1981 conviction of conspiracy to possess and distribute marijuana.

*II. Issues on Appeal.*

*A. Lirette's Testimony.*

It is undisputed that two years prior to Mergist's trial, and shortly after the marijuana smuggling transaction that was the basis for the trial, Lirette was apprehended by the Louisiana police and was coerced into giving testimony that implicated Mergist.[1] Mergist made a pretrial motion to suppress Lirette's testimony because of

script demonstrate that Lirette was threatened with indictment, injury, and death unless he agreed to incriminate himself and others.

this coercion. The trial court reviewed the tape and transcript of Lirette's interrogation and, without holding an evidentiary hearing, ruled Lirette's trial testimony admissible because, *inter alia:*[2]

> [T]here is no doubt that there was some severe coercion of the witnesses, and there is no doubt that the fifth amendment right of those witnesses were violated .... [T]he witnesses are not banned from testifying despite the fact that the witnesses' constitutional rights were violated.
>
> \*  \*  \*  \*  \*  \*
>
> The lapse of time between the illegally obtained statement and the trial causes the taint to be dissipated, and the witnesses are now testifying of their own free will. And this is, under the cases, an independent evidentiary source untainted by the statements, illegally obtained statements, so I will deny the motion to suppress.

Record Vol. III at 4–5.[3]

In the course of Lirette's testimony, portions of the tape of his interrogation were played to the jury, and during cross-examination the circumstances of the interrogation were fully explored by Mergist's attorney. On redirect examination, the prosecution inquired as to the voluntariness of Lirette's trial testimony. Lirette testified that although he had been coerced at the time of his arrest, his trial testimony was entirely voluntary and given of his free will.[4]

On appeal, Mergist contends that the trial court's failure to hold an evidentiary hearing prior to admitting Lirette's testimony constituted reversible error. We do not agree.

While the exclusionary rule bars evidence and testimony that is "tainted" as the result of illegal police conduct, *see, e.g., Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963), such evidence is admissible in circumstances where the relationship between the police's illegal conduct and the discovery of the challenged evidence is "so attenuated as to dissipate the taint." *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). The exclusionary rule of *Wong Sun* and the attenuation doctrine apply to physical evidence that is the product of illegal conduct as well as to verbal evidence discovered or elicited in the same manner. *Wong Sun,* 371 U.S. at 485, 83 S.Ct. at 416.

In *Wong Sun,* the Court observed that "the policies underlying the exclusionary rule [do not] invite any logical distinction between physical and verbal evidence." 371 U.S. at 486, 83 S.Ct. at 416. This predicate, however, has recently been reexamined and rejected by the Court. In *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), the Court addressed the concept of attenuation in the context of verbal evidence, noting that cases decided since *Wong Sun* have made clear that in such a situation, unlike one involving physical evidence, "[t]he issue [of attenuation] cannot be decided on the basis of causation in the logical sense

---

**2.** Alternatively, the court found that Mergist did not have standing to complain of violations of Lirette's rights. Our disposition of the case renders it unnecessary for us to consider this holding.

**3.** Mergist initially challenged the testimony of all three witnesses against him. On appeal, his argument deals solely with Lirette.

**4.** On redirect examination, Lirette was questioned and gave answers as follows:

> Q  Now, have I threatened you?
> A  No, sir.
> Q  Are you here today because of any threats I've made?
> A  No, sir. I came of my own free will.
> Q  Have I told you that I was going to kill you or put a bullet in your head or anything like that?
> A  No, sir, not at all.
> Q  Is what you told the jury for some two hours when you and I were asking and answering questions, is that substantially what happened?
> A  Yes, sir, to my recollection that's exactly what happened.
> Q  And is that the truth of the matter?
> A  Yes, sir, it is.

Record Vol. IV at 99–100.

alone, but necessarily includes other elements as well." *Id.* at 274, 98 S.Ct. at 1059. Thus, the Court expressly rejected the conclusion that "if the road [between the illegal conduct and the witness' testimony] were uninterrupted, its length was immaterial." *Id.* at 275, 98 S.Ct. at 1059. The Court's distinction between attenuation analysis as applied to inanimate evidence and live-witness testimony resulted in its holding that a number of factors are relevant in assessing the degree to which live-witness testimony is attenuated, including the length of the "road" between the law enforcement officials' illegal conduct and the witness' testimony at trial; the degree of free will exercised by the witness; and the fact that exclusion of the witness' testimony "would perpetually disable a witness from testifying about relevant and material facts, regardless of how unrelated such testimony might be to the purpose of the originally illegal [conduct] or the evidence discovered nearby." 435 U.S. at 277, 98 S.Ct. at 1061. Thus, the Court concluded that, when "evaluated properly, the degree of free will necessary to dissipate the taint will very likely be found more often in the case of live-witness testimony than other kinds of evidence." *Id.* at 276–77, 98 S.Ct. at 1060.

■ We think it is clear that under *Ceccolini*, a review of the entire record establishes that the trial court's finding of attenuation in this case was correct. Over two years had elapsed between Lirette's interrogation and his trial testimony; thus, the "road" was long. Moreover, he testified on cross-examination and on redirect that he was testifying voluntarily and of his own free will, and had not been coerced or threatened to do so. *See, e.g., United States v. Marder*, 474 F.2d 1192, 1196 (5th Cir.1973) (factor relevant in determining attenuation is "evidence that the witness was completely uncooperative when originally discovered by the illegal search but later changed his attitude and supplied the necessary information"); *see also United States v. Parker*, 722 F.2d 179, 185 (5th Cir.1983); *United States v. Houltin*, 566

F.2d 1027, 1032 (5th Cir.), *cert. denied*, 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 118 (1978).

In these circumstances, that the fact of the voluntariness of Lirette's testimony came out at trial rather than in a pretrial suppression hearing does not require reversal of Mergist's conviction. We have held that an evidentiary hearing is required "when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983); *see also United States v. Smith*, 546 F.2d 1275 (5th Cir.1977); *United States v. Poe*, 462 F.2d 195 (5th Cir.1972), *cert. denied*, 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973). Under this standard, the district court should have held an evidentiary hearing on the issue of the voluntariness of Lirette's testimony. In light of the record as a whole, however, it is clear that any error in failing to hold a hearing was harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see also United States v. Parker, supra*, 722 F.2d at 183 (error harmless where examination of entire record reveals that lack of error would not have changed verdict); *United States v. Lane*, 693 F.2d 385, 390 (5th Cir.1982) (to conclude error harmless beyond reasonable doubt, appellate court must examine entire record); *accord United States v. Williams*, 616 F.2d 759, 761 (5th Cir.), *cert. denied*, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980); *cf. United States v. Marder, supra*, 474 F.2d at 1197 (trial court's refusal to allow defendant to conduct voir dire of allegedly tainted witness, although erroneous, was harmless error where entire record demonstrated ample additional evidence of guilt).

■ Our case law does not support the proposition, moreover, urged by Mergist, that the judge is the sole appropriate arbiter of the voluntariness of a witness' testimony. In *United States v. Mack*, 695 F.2d 820 (5th Cir.1983), the defendant claimed error in the admission of two accomplices' testimony, asserting that they had been coerced. In rejecting this argument, we noted that the circumstances surrounding

the witnesses' testimony were fully aired to the jury, and held:

> The jury is the ultimate judge of the credibility of witnesses; whether the [witnesses'] testimony was credible was an issue for the jury .... This Court will intervene and declare testimony incredible as a matter of law only when it "is so unbelievable on its face that it defies physical laws."

*Id.* at 822 (citations omitted) (quoting *United States v. De Los Santos,* 625 F.2d 62, 65 (5th Cir.1980)); *see also United States v. Reed,* 715 F.2d 870, 874 (5th Cir.1983). Here, as in *Mack,* the circumstances of Lirette's interrogation were put before the jury. Its assessment of the degree to which his trial testimony was a product of free will does not rest on testimony that was patently incredible; thus, we decline to disturb it.

### B. Admissibility of Extrinsic Offense Evidence.

. At trial, the government was permitted to introduce evidence of Mergist's prior conviction of conspiracy to import and distribute marijuana. On appeal, Mergist contends that the admission of this extrinsic offense evidence was erroneous because in a conspiracy case, such evidence is admissible only where the defendant's intent is at issue. Mergist asserts that because his defense was not based on lack of intent, admission of the extrinsic offense evidence was unduly prejudicial.

Rule 404(b) of the Federal Rules of Evidence permits the admission of extrinsic offense evidence to prove, *inter alia,* the defendant's intent.[5] In *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), we established a two-pronged test for determining whether extrinsic offense evidence is admissible to prove intent. If "the extrinsic offense requires the same intent as the charged offense and ... the jury could find that the defendant committed the extrinsic offense," *id.* at 913, then "the extrinsic offense evidence is relevant to an issue other than the defendant's character," and the first prong of *Beechum* is satisfied. *Id.* 911. The second requirement is that "the evidence ... possess probative value that is not substantially outweighed by its undue prejudice ...." *Id.* In the instant case, the first prong of *Beechum* is clearly satisfied. The intent required for the extrinsic offense and the charged offense is the same, and Mergist had been convicted of the first. Thus, we turn to whether the trial court properly determined that the probative value of the extrinsic offense evidence was not outweighed by its unduly prejudicial impact.[6]

In *Beechum,* which was not a conspiracy case, we noted that the second prong often is not satisfied where the defendant's intent is not contested, because in such a case "the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice ...." *Id.* at 914. In *United States v. Roberts,* 619 F.2d 379 (5th Cir.1980), however, we drew a fundamental distinction between conspiracy cases and other types of criminal cases, holding:

> Charges of conspiracy involve considerations not present in other criminal prosecutions. "[T]he offense of conspiracy requires an element of intent or knowledge which is often difficult to prove." *United States v. McMahon,* 592 F.2d 871, 875 (5th Cir.), *cert. denied,* 442

---

**5.** Rule 404(b) provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**6.** *See* Fed.R.Evid. 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

U.S. 921 [99 S.Ct. 2847, 61 L.Ed.2d 289] (1979).... Intent is particularly difficult to prove when a defendant is a passive or minor actor in a criminal drama .... If the evidence linking a defendant to a conspiracy is subject to an innocent interpretation, the government may be forced to present some independent evidence of intent to support a motion for directed verdict.

\* \* \* \* \* \*

Because of the unique nature of conspiracy charges, we cannot apply to them the policy suggested in *Beechum* of uniformly excluding extrinsic offense evidence when the defendant does not actively contest intent.

*Id.* at 382–83. Mergist argues, however, that because his role in the conspiracy was not that of a "passive conspirator," *Roberts* does not apply. He asserts that the trial court erred in failing to consider the extent to which other evidence in the government's case tended to show his intent. *See Roberts*, 619 F.2d at 383; *Beechum*, 582 F.2d at 914.

We are not persuaded by this argument. As an initial matter we note that while *Roberts* spoke of the difficulty of showing intent with regard to passive conspirators, the decision was not limited to such individuals. Rather, we expressly stated in *Roberts* that "[i]n every conspiracy case ... a not guilty plea renders the defendant's intent a material issue" and justifies the introduction of relevant extrinsic offense evidence unless the defendant " 'affirmatively take[s] the issue of intent out of the case.' " 619 F.2d at 383 (quoting *United States v. Williams*, 577 F.2d 188 (2d Cir.),

*cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978)).[7]

Moreover, in *United States v. Renteria,* 625 F.2d 1279 (5th Cir.1980), we held that even where the defendant's defense effectively conceded intent, extrinsic offense evidence was nonetheless admissible:

Although in the end [the defendant] conceded intent on the marijuana counts by arguing entrapment, and effectively conceded intent on the cocaine counts by arguing impossibility, the government could not know that with certainty when it presented its case in chief.

625 F.2d at 1281–82. In the instant case, similarly, at no point did Mergist "affirmatively take the issue of intent out of the case." The government could not know with any degree of certainty when it presented its case in chief whether Mergist's defense would contest or concede the issue of intent. The record reflects that his defense was one of innocence and that he sought to cast doubt throughout the trial on the credibility of the government's witnesses.[8] The issue of intent, in fact, contrary to Mergist's contention, remained squarely posed by the case. In these circumstances, we think *Renteria* and *Roberts* mandate our conclusion that the extrinsic offense evidence was properly admitted against Mergist.

The judgment of the district court is AFFIRMED.

---

**7.** We noted in *Roberts* that to remove the issue of intent from the case, the defendant denying all participation could, *e.g.,* stipulate that if his participation was proved, so was intent. *619* F.2d at 383 n. 2.

**8.** In his closing statement, Mergist's attorney argued:

Jerry Mergist is innocent. As he sits before you, he is still innocent. He is innocent until he is proven guilty. He will still be innocent when you go to the jury room to deliberate on

what you have heard and seen here these past few days.

\* \* \* \* \* \*

Who's the fall guy? They need one. They got one. Notice that none of the people here, although they admit that they did the deed, were indicted. In return for that kind of consideration, they're going to find the fall guy, and a fall guy they found in Jerry Mergist.

Record Vol. IV at 24, 32.