THE STATE OF OHIO, APPELLANT, *v.*
HAWLEY, APPELLEE.

(No. 47010—Decided
August 6, 1984.)

*John T. Corrigan,* prosecuting attorney, and *DeLouis Broughton,* for appellant.

*Jay B. White,* for appellee.

*Per Curiam.* On November 21, 1981, at about 5:45 p.m., police officer Michael McNeeley met with detectives from the narcotics bureau. He was instructed to assist in serving a search warrant[1] at Carrie's Delicatessen, 8410 Hough Avenue. The search warrant was for a person about six feet, one inch in height, one hundred sixty pounds, and forty-five years of age with a short gray and black afro. McNeeley testified that he was not familiar with the details of the warrant.

The police officers arrived at the deli at about 6:00 p.m. McNeeley went around to the back of the deli. Although it was dark and beginning to rain, the area was artificially lit by the reflection

———

[1] The prosecutor has attached a copy of a search warrant to his appellate brief upon which he relies in his argument and expects this court to recognize. However, items attached to an appellate brief are *not* a part of the record below and will not be considered by this court. See *Lamar* v. *Marbury* (1982), 69 Ohio St. 2d 274 [23 O.O.3d 269]; *State* v. *Mitchell* (Feb. 3, 1983), Cuyahoga App. No. 45014, unreported. Having the actual search warrant in its entirety is unnecessary to the disposition of this case, however, since relevant portions of the warrant are included in the transcript.

from the street lights on Hough and a light of some sort in the back of the deli. McNeeley positioned himself behind an automobile parked at the rear of the deli and crouched down with his weapon drawn. He waited about ten to fifteen seconds until he believed everything was secure up front.

Officer McNeeley started to walk to the front of the deli. He saw a black male, later determined to be appellee Jerald E. Hawley, trotting toward him and looking back toward Hough Avenue in the direction of the front of the deli. McNeeley identified himself as a police officer and told appellee to stop and to put his hands in full view. Appellee began to retreat, but he slipped and fell. McNeeley told him to stand up and show his hands. McNeeley testified that he saw a clear plastic bag sticking out of appellee's left coat pocket which contained a white powder. McNeeley patted appellee down for a weapon and found none. He did find several packets of a white substance in a cellophane bag. He then holstered his gun, handcuffed appellee, gave him his rights, and walked him to the front of the deli. McNeeley then left after he turned custody of appellee over to the officer in charge. It was later determined that appellee was not the individual described in the search warrant.

Appellee testified that he was leaving a friend's apartment and going to the deli. He saw that a raid was in progress, so he left and decided to cut through the field to the east of the deli. Appellee admits that he did not stop at the officer's request, but started to back up and then fell. He testified that McNeeley searched and arrested him, and took him into the deli. Appellee further testified that all of his pockets were zipped so that McNeeley could not have seen anything when he fell in the field. Appellee was thoroughly searched inside the store at which time cocaine was found.

Appellee was indicted for trafficking in drugs in violation of R.C. 2925.03. He filed a motion to suppress the drugs, which the trial court granted for the reason that probable cause to arrest appellee was lacking. The state timely appealed, raising the following assigned error:

"The trial court erred in granting defendant's motion to suppress physical evidence where the testimony of the arresting officer disclosed that facts and circumstances existed that were known to him, and that would warrant he [sic] or any prudent man in believing that an offense had been committed."

The Fourth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams* v. *Williams* (1972), 407 U.S. 143, 146. The facts known to Officer McNeeley were as follows: he was assisting the narcotics bureau in a drug raid at Carrie's deli by covering the rear of the store; he was acting pursuant to a search warrant; he was looking for a black male who was involved with drugs; he saw a black male leaving the front of Carrie's deli jogging across a field away from the deli; and he saw the individual turning his head to look back toward the front of the deli as he ran in the opposite direction. Moreover, when McNeeley told the individual to stop, he began to back away instead. The United States Supreme Court has stated that "execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Michigan* v. *Summers* (1981), 452 U.S. 692, 702. Certainly, under these circumstances, McNeeley was justified in stopping appellee.

When appellee began to retreat after McNeeley told him to stop, he slipped and fell in the field. It was at this time that McNeeley stated he saw the clear plastic bag containing a white powder. Although McNeeley could not positively identify the substance as cocaine, "[p]olice officers are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination." *United States v. Roberts* (C.A.5, 1980), 619 F.2d 379, 381; *United States v. Perez* (E.D.N.Y. 1983), 574 F. Supp. 1429, 1437; *State v. McDaniels* (July 7, 1977), Cuyahoga App. No. 3065, unreported. McNeeley testified that he arrested appellee after he saw the packet of controlled substance. However, the appellee testified all his pockets were zipped and nothing was found until he was searched. The trial court made no specific finding on this conflict in the testimony and therefore we are unable to determine whether anything was in plain view which would warrant further examination by the police.

The judgment is reversed and remanded to the trial court to resolve this issue.

*Judgment reversed and cause remanded.*

NAHRA and MARKUS, JJ., concur.

DAY, C.J., not participating.