United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 17, 2003**

Charles R. Fulbruge III
Clerk

**REVISED JANUARY 6, 2004**
**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-21211

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAGGIE POWELL,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas, Houston

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant Maggie Powell ("Powell") pleaded guilty to one count of violating 18 U.S.C. § 371, conspiracy to commit theft of government property, and one count of violating 18 U.S.C. §§ 641 and 642, theft of and aiding and abetting theft of government property. Before sentencing, Powell moved to withdraw her guilty plea, and the district court denied that motion without conducting an evidentiary hearing. The district court sentenced Powell to 366 days' imprisonment and three years' supervised release, and ordered Powell to pay a $200 special assessment and $190,751.37 mandatory restitution pursuant to 18 U.S.C. § 3663A, also known as the

Mandatory Victims Restitution Act ("MVRA"). Powell appeals her conviction and sentence, claiming first, that the district court committed harmful error because it did not inform her of its authority to order mandatory restitution during her plea colloquy, and second, that the district court abused its discretion by denying her motion to withdraw her guilty plea without giving reasons and by not holding an evidentiary hearing on such motion. Both parties agree that the case should be remanded under Fed. R. Crim. P. 36 to correct the judgment to reflect that the health care fraud charge against Powell was dismissed. Because the district court's error in not informing Powell of its authority to order mandatory restitution was harmless and because the district court did not abuse its discretion in denying Powell's withdrawal motion and in not holding a hearing, we AFFIRM the conviction and sentence below. We also REMAND with instruction to correct Powell's judgment to reflect dismissal of the health care fraud charge.

## BACKGROUND

On October 4, 2000, Powell and co-defendants Beverly Scott ("Scott") and Doretha Chambers ("Chambers") were indicted by the grand jury of one count of conspiracy to commit theft of government property under 18 U.S.C. § 371 ("count one"); one count of theft and aiding and abetting theft of government property under 18 U.S.C. §§ 641 and 642 ("count two"); and one count of health care fraud under 18 U.S.C. § 1347 ("count three"). This indictment

2

resulted from an undercover investigation initiated in 1997 by the Inspector General of the Office of Investigations for the Department of Veterans Affairs, and joined in mid-1998 by the Drug Enforcement Agency and the Food and Drug Administration's Criminal Investigative Division. The investigation revealed the repeated theft of noncontrolled, prescription drugs by the co-defendant pharmacy technicians from the Veterans Affairs Medical Center outpatient pharmacy ("VAMC"). The investigation also revealed the repeated subsequent delivery and sale of those drugs to William Carrillo ("Carrillo"), owner of Economical Pharmacy.

On July 11, 2000, Special Agent Phillip Eubanks ("Eubanks") with the Department of Veterans Affairs contacted Powell, advised her of his identity, and inquired about theft of drugs from the VAMC. Powell agreed to provide a statement, which she signed. This statement outlined that sometime in 1996, fellow pharmacy technician Scott asked Powell if she needed an extra job and informed Powell that Scott had a contact who would buy stolen drugs from the VAMC. Some months later, Powell agreed to work with Scott to remove drugs from the VAMC and sell them to Scott's contact. This contact was only known to Powell as "Bill." In her statement, Powell indicated that once a month, sometimes twice a month, she would receive a written order, listing what drugs Bill needed, from Scott. Powell would remove those drugs, if available, and place them in a paper bag. Sometimes fellow pharmacy technician Chambers assisted Powell. Then a courier posing as a veteran would arrive

at the prescription pickup area at the VAMC and take the bag of drugs; Scott would later retrieve the drugs from the courier, or from her locker where the courier had placed them, and take them to Bill.  After meeting with Bill to hand over the drugs, Scott would split the proceeds with Powell and Chambers.

At arraignment on October 16, 2000, Powell entered a plea of not guilty.  However, at rearraignment on December 8, 2000, pursuant to a written plea agreement, and with her appointed counsel Robert Fickman ("Fickman") present, Powell pleaded guilty to counts one and two.  During Powell's rearraignment, the government laid out a statement of the facts that the government would be prepared to prove at trial.  According to the government, this factual basis would be evidenced at trial by Powell's statement, the statements given by Scott and Chambers, and testimony by Eubanks and certain pharmacy employees.  The government informed the court that evidence would show Powell assisted in removing drugs from the pharmacy on at least 31 occasions and that the average cost of drugs removed each time was approximately $6,153.27, resulting in a total loss to the government of approximately $190,751.37, based on Powell's conduct.  Also, the government stated that at the time of sentencing, it would move to dismiss count three of the indictment.

During the plea colloquy, the district court advised Powell that she faced a maximum of five years in prison and a $250,000 fine for count one, and a maximum of ten years in prison and a

4

$250,000 fine for count two.  The district court also informed Powell that she would have to pay a special assessment of $100 for each count and that the court could impose a period of supervised release of up to three years following any term of imprisonment. The district court did not advise Powell that as a consequence of her guilty plea, the court was required to impose mandatory restitution on her pursuant to 18 U.S.C. § 3663A.[1]

On July 19, 2001, Fickman was allowed to withdraw as counsel because Powell had terminated him.  At that hearing, Powell orally moved to withdraw her guilty plea, but the district court did not

---

[1]  Section 3663A provides:

(b) The order of restitution shall require that such defendant–
   (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense . . .
      (B) . . . pay an amount equal to–
         (i) the greater of–
            (I) the value of the property on the date of the damage, loss, or destruction; or
            (II) the value of the property on the date of sentencing, less
         (ii) the value (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C. § 3663A(b)(1)(B).  "This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense . . . that is . . . an offense against property under this title." *Id.* § 3663A(c)(1)(A).  Here, Powell was subject to MVRA because she pleaded guilty to offenses that are considered "offense[s] against property under this title" – that is, conspiracy to steal and theft of and aiding and abetting theft of government property (the VAMC's drugs) under 18 U.S.C. §§ 371, 641, and 642.

allow withdrawal. Sentencing in the case was repeatedly continued. On May 20, 2002, Powell, under new counsel, filed a written motion to withdraw her guilty plea on various grounds, including her contention that the district court's failure to advise her about mandatory restitution violated Rule 11 and rendered her plea involuntary. The district court, without assigning reasons or conducting an evidentiary hearing, denied the motion on May 30, 2002.

The district court sentenced Powell on October 7, 2002, to a 366-day term of imprisonment for each of counts one and two, to run concurrently; a three-year term of supervised release for each of counts one and two, to run concurrently; a mandatory special assessment of $200; and mandatory restitution in the amount of $190,751.37 (liable jointly and severally with co-defendants Chambers and Carrillo, according to the judgment). At sentencing, the government moved and the district court agreed to and ordered dismissal of count three of the indictment. The judgment did not reflect that dismissal. Powell timely appealed.

## DISCUSSION

### Whether the district court committed harmful error in not informing Powell of the court's authority to impose mandatory restitution.

When a defendant objects at the district court level to the court's failure to comply with Rule 11 during the plea colloquy, this Court reviews the challenge pursuant to the harmless error standard. *United States v. Johnson*, 1 F.3d 296, 298 (5th Cir.

6

1993) (en banc); *see also* **United States v. Vonn**, 535 U.S. 55, 71-74 (2002) (holding that plain error review applies to Rule 11 objections raised for the first time on appeal and explaining that harmless error review applies to Rule 11 objections raised before appeal is taken).  The two considerations in the harmless error analysis are:  (1) whether the sentencing court in fact varied from the procedures required by Rule 11 and (2) whether such variance affected the "substantial rights" of the defendant.  **Johnson**, 1 F.3d at 298.  To determine whether an error affects substantial rights, *i.e.*, is harmful, the focus is on "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." **Id.** at 302.

Rule 11 requires the district court during the plea colloquy to inform the defendant about any mandatory minimum penalty and about the court's authority to order restitution.[2]  Although

---

[2]  Rule 11, at the time of Powell's plea, stated in part:

> (c) Advice to Defendant.  Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>   (1) the nature of the charge to which the plea is offered, the **mandatory minimum penalty** provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, . . . and, when applicable, that **the court may order the defendant to make restitution** to any victim of the offense.

Fed. R. Crim. P. 11(c)(1) (2000) (now located at Rule 11(b)(1))

Powell's plea agreement and PSR both discussed restitution,[3] and the government during the plea colloquy discussed the amount of loss attributable to Powell ($190,751.37) and how it was calculated, the district court made no mention of restitution during the plea colloquy at her rearraignment. The government does not contest that the district court erred by varying from the procedure required by Rule 11.

This Court has previously found in **United States v. Glinsey**, 209 F.3d 386, 395 (5th Cir. 2000), that a defendant's substantial rights are not infringed when the district court, contrary to Rule 11, fails to admonish him of the court's authority to order restitution as a penalty where the district court did inform him of the maximum possible fine. There, the district court imposed restitution in the amount of $1,266,317.06 pursuant to 18 U.S.C. § 3663, also known as the Victim and Witness Protection Act

(emphasis added).

[3] Powell's plea agreement stated that "[t]he defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately." Powell's PSR specifically noted that she would be held accountable for the entire calculated wholesale loss of $2,901,903 and would be subject under the MVRA and under § 5E1.1 of the U.S. Sentencing Guidelines to restitution in the amount of $1,318,284 for the VAMC's actual loss. Powell objected to the amount of the loss calculation in the PSR and to her being held accountable for the entire amount of such calculated loss. Powell also objected to the amount and the imposition of restitution due to her inability to pay. Also, Powell referred to the amount of $190,751.37, the amount noted by the government during the plea colloquy as being attributable to Powell's conduct, as "the correct provable basis for the loss calculation" to be attributed to Powell.

("VWPA").[4] *Glinsey*, 209 F.3d at 394-95. This particular amount of loss was calculated using the amount of illegally acquired food stamps Glinsey and his co-conspirators allegedly redeemed ($1,506,128) minus the total gross sales reported by their businesses ($239,810.94). *Id.* at 391. Because Glinsey had been warned about a maximum possible fine of $1 million, we reduced the amount of restitution ordered to $1 million to prevent any infringement of his substantial rights, *i.e.*, harmful error. *Id.* at 395.

Here, Powell claims that the district court varied from the required Rule 11 procedures because the court failed to advise her at rearraignment that she would be subject to mandatory restitution under the MVRA. She claims this variance affected her substantial

---

[4] Section 3663 provides: "The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A). Section 3663 also states:

(b) The order may require that such defendant–
    (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense . . .
        (B) . . . pay an amount equal to the greater of–
            (i) the value of the property on the date of the damage, loss, or destruction, or
            (ii) the value of the property on the date of sentencing,
            less the value (as of the date the property is returned) of any part of the property that is returned.

*Id.* § 3663(b)(1)(B).

9

rights.  While Powell acknowledges the holding of *Glinsey*, she argues that because the restitution there was discretionary, not mandatory, her case is distinguishable.  In other words, because the restitution was mandatory here, the underlying assumption that there is no difference between restitution and a fine is no longer valid.  Thus, Powell contends the effect of a mandatory penalty versus a discretionary penalty on a defendant's willingness to plead is substantial.  The government argues Powell's case is entirely covered by *Glinsey* and therefore the Rule 11 error was harmless.  That is, because the district court did warn Powell that she faced fines up to $500,000, the omission of any mention of restitution (which was ultimately over $300,000 lower than the total possible fines) could not have affected Powell's substantial rights – her willingness to plead guilty.

This Court in *Glinsey* seemed to base its decision on the amount of financial exposure of which the defendant had notice, so the proper course to avoid infringement of the defendant's substantial rights is for the district court to set liability no higher than the defendant's level of notice.  "Whether the amount to be paid is classed as restitution or a fine ordinarily makes little difference in its bite, and warning of one but not the other does not require collateral relief."  *Glinsey*, 209 F.3d at 395 (quoting *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990)).  It is the amount of financial liability, not the label

10

"fine" or "restitution," that affects a defendant's substantial rights. *See **id.*** Thus, a defendant warned in the plea colloquy about the possibility of having to pay $500,000 in fines, who otherwise voluntarily pleads guilty, would not have her rights substantially affected by being ordered to pay back mandatory restitution in a much lower amount. During her plea colloquy, Powell was made well aware of the maximum amount of liability in fines she faced, and her ordered restitution did not come close to exceeding that amount. Therefore, we find the district court's Rule 11 error was not harmful under the facts of this case.

In doing so, we acknowledge that the restitution in **Glinsey** was ordered pursuant to 18 U.S.C. § 3663, which authorizes courts to impose discretionary restitution, and not pursuant to the MVRA, which since its adoption as part of the Antiterrorism and Effective Death Penalty Act in 1996 requires courts to impose mandatory restitution for certain crimes. 18 U.S.C. § 3663A note; *see also* **United States v. Mancillas**, 172 F.3d 341, 342 n.6 (5th Cir. 1999). We also acknowledge that unlike 18 U.S.C. § 3663(a)(1)(B)(I), which provides that "[t]he court, in determining whether to order restitution under this section, shall consider . . . the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate," the MVRA requires the district court to order the full amount of restitution, without

11

regard for the defendant's economic circumstances and ability to pay. **United States v. Myers**, 198 F.3d 160, 168-69 (5th Cir. 1999) (explaining that under the MVRA the district court can only take a defendant's financial situation into account when setting the schedule of payments, not when deciding whether to order restitution); *see also* 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.").[5]

Because pleading guilty to certain crimes will result in an order of mandatory restitution and because the district court cannot consider the pleading defendant's financial situation and must order payback of the full amount, it is extremely critical that the sentencing judge give as full a disclosure as possible at the time of the plea colloquy regarding the court's authority to order mandatory restitution and the probable quantum thereof. To fully comply with Rule 11, the district judge should not only advise the defendant as to the maximum amount of statutory fine that could be levied as to each count, but also as to the fact that, as to each count where the MVRA would apply, the court is required to impose an amount of mandatory restitution to be paid to

_____

[5] Section 3664 outlines the proper procedure for issuing and enforcing restitution ordered pursuant to the VWPA and the MVRA.

12

the victim or victims which suffered loss as a result of the defendant's conduct. So long as the total of (1) fines actually assessed by the district court and (2) restitution actually awarded to victims does not exceed the total dollar amount that the court used in notifying the defendant of the consequences of his plea, we believe the holding in **Glinsey** should apply. But failure of the district court to notify the defendant as to the quantum of mandatory restitution under the MVRA could be harmful error when the quantum of that restitution exceeds the liability amount used by the court in notifying the defendant as to the consequences of his guilty plea.

**Whether the district court abused its discretion in denying Powell's motion to withdraw her guilty plea without giving reasons and in not holding an evidentiary hearing.**

A district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. **United States v. Lampazianie**, 251 F.3d 519, 523 (5th Cir. 2001) (citation omitted); *see also* **United States v. Mann**, 161 F.3d 840, 860 (5th Cir. 1998) ("[A] district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence."). A defendant does not have an absolute right to withdraw her guilty plea. **United States v. Brewster**, 137 F.3d 853, 857 (5th Cir. 1998). However, a district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a "fair and just reason." **Id.** (citing former Fed. R.

Crim. P. 32(e), now located at Rule 11(d)(2)).

The defendant bears the burden of establishing a fair and just reason for withdrawing his plea. *Id.* at 858. This Circuit considers seven factors when deciding whether the defendant has met this standard: whether (1) the defendant asserted his innocence, (2) withdrawal would cause the government to suffer prejudice, (3) the defendant delayed in filing the motion, (4) withdrawal would substantially inconvenience the court, (5) close assistance of counsel was available, (6) the original plea was knowing and voluntary, and (7) withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984). The district court's decision to permit or deny the motion is based on the totality of the circumstances. *Brewster*, 137 F.3d at 858 (citation omitted). And the district court is not required to make findings as to each of the *Carr* factors. *Id.* (citing *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991)).

Although defendants are not entitled to an evidentiary hearing, a hearing is required "when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Mergist*, 738 F.2d 645, 648 (5th Cir. 1984) (citation omitted). However, a district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *See United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). Plus, any errors made in failing to hold evidentiary hearings are

14

subject to the harmless error standard.  *Mergist*, 738 F.2d at 648.

Powell relies heavily on *United States v. Pressley*, 602 F.2d 709, 711 (5th Cir. 1979), to argue that the summary denial of her motion to withdraw her guilty plea renders this Court unable to determine whether the district court exercised appropriate discretion and requires remand so the district court can state its reasons.  Alternatively, Powell claims the district court abused its discretion by not holding an evidentiary hearing because Powell's motion was very detailed and not conclusory as to how each *Carr* factor weighed in her favor.  The government responds that the district court implicitly adopted the detailed reasons for denial set forth in its response to Powell's motion.  In other words, as it was not required to make specific findings, the district court evaluated the *Carr* factors and found they weighed against withdrawal of Powell's plea.  The government also argues that no evidentiary hearing was warranted because Powell did not present any factual issues in her motion that would have necessitated an evidentiary hearing.

We find Powell's case easily distinguishable from *Pressley*. In *Pressley*, which was decided prior to *Carr*, this Court remanded where the district court seemed inclined initially to grant but then simply denied the motion to withdraw Pressley's guilty plea after a psychiatric evaluation found him competent at the time of his plea.  602 F.2d at 710.  In doing so, we noted specifically

15

that factors (such as those later outlined in *Carr*) should be considered by the district court when deciding a motion to withdraw a guilty plea. *Id.* at 711. There, however, the district court merely denied the motion after it satisfied itself that Pressley was competent to understand the plea proceedings. *Id.* There is no indication that Pressley or the prosecution had put forth any arguments as to *Carr*-like factors for the district court to consider. Here, the district court determined in its discretion, based on the totality of the *Carr* factors as fully briefed by both Powell and the government, that Powell did not meet her burden of establishing a fair and just reason to justify withdrawal. Under *Brewster*, the district court could have made but was not required to make specific findings in denying Powell's motion. Therefore, the district court did not abuse its discretion in denying Powell's motion to withdraw her guilty plea without giving reasons.

As for the district court's refusal to hold an evidentiary hearing, while Powell's motion did allege numerous reasons why her plea should be withdrawn, first, even if they were all true the totality of the *Carr* factors did not clearly tip in Powell's favor to justify relief. Thus, there is no error of law. Also, we find no indication that the district court made any clear errors in assessing the evidence pertaining to Powell's plea. Therefore, the district court did not abuse its discretion in denying Powell an evidentiary hearing.

16

**Whether the case should be remanded for correction of Powell's judgment under Rule 36 because it does not reflect dismissal of the health care fraud charge.**

Fed. R. Crim. P. 36 allows a court "at any time" to correct clerical errors in the judgment "[a]fter giving any notice it considers appropriate." Both Powell and the government agree that this Court has reviewed clerical errors in the judgment for the first time on appeal and properly remanded for correction of those errors. *See United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001).

Here, there is no question that the government, pursuant to the plea agreement, moved at Powell's sentencing to dismiss count three of the indictment. The district court duly granted the motion. However, the judgment does not reflect that such count has been dismissed. Therefore, a simple remand to correct such clerical error is proper.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court erred in not informing Powell of its authority to impose mandatory restitution; however, such error was harmless. We also conclude the district court did not abuse its discretion by deciding to deny Powell's motion to withdraw her plea without stating reasons, and by deciding not to hold an evidentiary hearing on such motion. Therefore, we AFFIRM

17

the decision of the district court below; but we also REMAND to the district court with an instruction to correct the judgment to reflect dismissal of count three against Powell.

**AFFIRMED** and **REMANDED** with instruction.