# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10078

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

EMANUEL JAMES HARRISON, also known as E. J., also known as Chris,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Emanuel James Harrison pled guilty pursuant to a plea agreement to one count of conspiracy to file false claims. The district court denied Harrison's motion to withdraw his guilty plea without an evidentiary hearing. He was sentenced to eighty-four months of imprisonment and three years of supervised release. Harrison appeals, challenging only the district court's refusal to hold an evidentiary hearing on his withdrawal motion. We AFFIRM.

No. 14-10078

I.

A grand jury charged Harrison in a multi-count, multi-defendant[1] indictment with conspiracy to defraud the Internal Revenue Service ("IRS") by filing false claims and with two counts of filing a false claim.[2] Three days before his trial was set to begin, Harrison signed a plea agreement in which he agreed to plead guilty to the conspiracy charge.[3] In exchange, the government agreed to dismiss the remaining charges. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed to a sentence of eighty-four months, which was twenty-four months below the statutory minimum as calculated based on Harrison's offense level and criminal history category. Harrison also agreed to waive his right to appeal his conviction and sentence, but he expressly reserved the right to challenge the voluntariness of his guilty plea or waiver of appeal and the right to bring a claim of ineffective assistance of counsel.[4]

Although Harrison's codefendants signed identical plea agreements, Harrison's plea agreement did not mention Harrison's codefendants, nor did it

---

[1] Harrison was charged alongside five codefendants. Two of the codefendants were Harrison's brothers, Jason Phread Altman and Jarrod Phread Altman.

[2] The grand jury initially charged Harrison in an indictment dated December 6, 2011. The grand jury issued a superseding indictment on November 7, 2012, naming an additional codefendant. Both the initial indictment and the superseding indictment charged Harrison as "Emanuel James Harrison a.k.a. 'E.J.' 'Chris.'" Both indictments charged Harrison with one count of conspiracy to file false claims and two counts of filing a false claim.

[3] Harrison's trial was set to begin Monday, August 5, 2013. Harrison signed the plea agreement on Friday, August 2, 2013.

[4] Harrison's plea agreement included the following waiver provision:
    **Waiver of right to appeal or otherwise challenge sentence:** Harrison waives his rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal from his conviction and sentence. He further waives his right to contest his conviction and sentence in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. Harrison, however, reserves the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of his plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel. R. at 229-30.

No. 14-10078

state a condition that each codefendant had to accept the same plea agreement before the government would agree to any of the plea agreements. Harrison also signed a plea agreement supplement indicating that there were no additional terms to his plea agreement.[5] Counsel for Harrison signed both the plea agreement and the plea agreement supplement. Counsel also signed a statement appended to each document indicating that he had "carefully reviewed every part" of the document with Harrison and that, to his knowledge and belief, Harrison's decision to sign each document was informed and voluntary.

Harrison also signed a "factual resume"—a statement on the record providing a factual basis for his guilty plea.[6] He agreed that, beginning in 2007, he and several of his codefendants opened and operated a tax preparation business called "Tax on the Run" ("TOTR"). He admitted that, "[b]eginning in or about March [ ] 2009," he and others knowingly conspired to use TOTR to file false tax returns in the names of numerous clients that "overstated and fabricated income and tax deductions . . . by falsely representing [to the IRS] that the taxpayers were entitled . . . to claim a tax credit as a first-time home buyer."[7] Harrison further admitted that, once a taxpayer-client obtained an advanced refund check, the conspirators would transport the taxpayer-client to a local check cashing business and instruct the taxpayer-client to cash the refund check. "After the check was cashed, members of the conspiracy paid the taxpayer[-client] a small percentage of the refund and kept the remainder of the proceeds."[8]

---

[5] *Id.* at 356-57.
[6] *Id.* at 233-36.
[7] *Id.* at 235.
[8] *Id.* at 235-36.

No. 14-10078

The district court rearraigned Harrison, Jason Phread Altman, and another codefendant, Fread Jenkins, in the same proceeding on August 2, 2013. Harrison indicated that he had reviewed the factual resume, that he understood the information within it, and that the facts stipulated were true and correct. Harrison further indicated that he was pleading guilty voluntarily, that he had not been threatened, forced, or coerced, and that no one had promised him anything other than what was written in the plea agreement in exchange for his plea. The district court accepted Harrison's guilty plea and explained that it would decide whether to accept his plea agreement after looking at his presentence report (PSR) and that, if it ultimately did not accept the plea agreement, Harrison could withdraw his plea.

On September 9, 2013, more than five weeks after he pled guilty, but before the PSR had been prepared, Harrison moved to withdraw his guilty plea. He asserted his innocence, alleging that he never knowingly or intentionally filed a false claim while working with TOTR and that he ceased working with TOTR before becoming aware of the conspiracy to file false claims. He also claimed that his plea was not knowingly and voluntarily entered because, "due to external pressure and influencing factors, [he] felt threatened and intimidated."[9] Harrison offered no elaboration or further explanation of this claim. In an affidavit attached to the motion, Harrison verified the truth of his assertions. On the same date, Harrison's appointed attorneys moved to withdraw as counsel of record, citing "irreconcilable differences . . . impacting [their] ability to represent [Harrison]" stemming from Harrison's desire to withdraw his guilty plea.[10] Harrison signed the motion,

---

[9] *Id.* at 241.
[10] *Id.* at 245.

4

expressing his agreement with his attorneys' request. The government opposed both motions.

The district court denied Harrison's motion to withdraw his guilty plea in an order dated September 30, 2013. Applying the seven-factor test set out in *United States v. Carr*,[11] which the Fifth Circuit employs in considering whether to grant a defendant's motion to withdraw a guilty plea, the district court found, in relevant part: that "Harrison's assertion of innocence without more is insufficient to permit withdrawal;" that "Harrison provides no evidence as to the pressure, threats, or intimidation he now claims resulted in his involuntary plea;" that "the government would suffer prejudice if Harrison is allowed to withdraw his plea;" that "withdrawal . . . would substantially inconvenience the court and would result in a waste of judicial resources" because it would require the district court to repeat the scheduling and trial preparation it had undertaken prior to when Harrison entered his plea; and that "Harrison's attorney[] is widely considered one of the best criminal defense attorneys in the Dallas area [and t]hus Harrison had the close assistance of counsel."[12] The district court concluded that the *Carr* factors did not warrant allowing Harrison to withdraw his guilty plea. The district court's order did not address Harrison's attorneys' motion to withdraw as counsel of record.[13]

Harrison then moved for reconsideration of his motion to withdraw his guilty plea and specifically requested an evidentiary hearing. Harrison attached three statements. First, he attached an unsworn statement from codefendant Fread Jenkins indicating that Harrison "did not participate [in the scheme,] nor did he gain financially in any way" from the scheme.[14] Second,

---

[11] 740 F.2d 339, 343-44 (5th Cir. 1984) (setting forth a seven-factor test, discussed below).

[12] R. at 258-61.

[13] Counsel continued to represent Harrison through his sentencing hearing.

[14] R. at 362.

he attached an unsworn statement from his sister, who had also worked at TOTR but was not indicted, indicating that Harrison had resigned from TOTR in "February or March of [ ] 2009 . . . at the beginning of the tax season."[15] Third, he attached his own sworn affidavit asserting his innocence and stating that had resigned from TOTR in March 2009 and had severed ties with the operation, that it was not until August 2009 that he learned his brothers and other associates had been filing false claims, that he did not know the individuals on whose behalf he was alleged to have filed false claims, and that he had never used the aliases "Chris" or "Bobby."[16] The district court denied Harrison's motion to reconsider without stated reasons.

At Harrison's sentencing hearing, Harrison personally addressed the district court and again asked to withdraw his guilty plea on the grounds that he was actually innocent, his plea was involuntary, and he received ineffective assistance of counsel. He asked the district court to hold an evidentiary hearing so that he could present evidence supporting his actual innocence, "to include but not limited to codefendant statements affirming that [he] did not conspire nor participate in the [scheme]."[17] He claimed that he pled guilty under duress and coercion because the prosecutor would agree to favorable eighty-four-month sentences for each defendant only if "all siblings [pled] guilty," and he felt pressured to accept the plea because his brothers otherwise faced up to forty years of imprisonment.[18] Finally, he argued that he received ineffective assistance of counsel when counsel advised him to enter the plea agreement despite his assertion of innocence because counsel erroneously suggested that he would be prejudiced by a prior sexual assault conviction and because

---

[15] *Id.* at 363.
[16] *Id.* at 364-65.
[17] *Id.* at 324.
[18] *Id.* at 325.

counsel did not investigate or discover exonerating evidence, "for example, the true identi[ty] of Chris Smith."[19]

The district court reiterated its denial of Harrison's motion to withdraw his guilty plea:

> I appreciate what you are saying, but as I stated in my written orders, you were here in August. I asked you if you were guilty. You said you were, I asked you if you were being coerced. You said you weren't. And I have to accept that. And so that is why I denied your motion to withdraw your plea . . .
>
> There is evidence certainly that I have before me that is in the presentence reports that certainly indicates your guilt, along with the other co-[d]efendants that have pled guilty, so I am not sure what is driving your insistence that after you came in here and said your were guilty under oath . . . I don't know what is driving that, and I guess it doesn't really matter. But I am denying the motion to withdraw the plea of guilty . . .
>
>  . . . [Y]ou will be entitled to raise an ineffective assistance of counsel claim. I do not know what happened here. I know [your attorney]. He comes into this court regularly. He is one of the best lawyers in town, and you just have to understand and face that.
>
> Like I say, I don't know what happened. You are entitled to raise your claim, as [the government] pointed out. We will deal with that when the time comes. But that is part of what is going on here that I don't quite understand where you are coming from with your allegations that you are making, but you are entitled, of course, to make them.[20]

The district court accepted Harrison's plea agreement and sentenced him to eighty-four months of imprisonment and three years of supervised release.

---

[19] *Id.* at 326. Harrison further indicated "[t]here is information that was forwarded to the government [on the morning of the sentencing hearing], concerning that [exonerating] information." *Id.* The record on appeal contains no such information.

[20] *Id.* at 328-29, 332-33.

No. 14-10078

It also ordered Harrison to pay $868,907.10 in restitution and a $100 special assessment. Harrison timely appealed his conviction to challenge the district court's refusal to hold an evidentiary hearing on his motion to withdraw.

II.

We must first determine whether the waiver provision contained in Harrison's plea agreement bars this appeal. The government contends that we need not consider Harrison's arguments because Harrison did not specifically preserve his right to appeal the district court's refusal to hold an evidentiary hearing on his motion to withdraw. As this issue involves a question of law, we review de novo.[21] The right to appeal a criminal conviction is not a constitutional one, but rather "a creature of statute."[22] A defendant may waive his right to appeal as part of a plea agreement only if such waiver is knowing and voluntary.[23] In considering the validity of an appeal waiver, we conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary, and (2) whether, under the plain language of the agreement, the waiver applies to the circumstances at issue.[24] We apply "ordinary principles of contract interpretation, construing waivers narrowly and against the [g]overnment."[25]

Although Harrison's plea agreement contains an unambiguous waiver of his right to appeal from his conviction and sentence, he alleges that his ratification of the plea agreement was involuntary due to its coercive nature. Moreover, the plain language of the waiver provision expressly reserves to Harrison the right to challenge the voluntariness of his plea or the waiver provision and the right to bring a claim of ineffective assistance of counsel. Harrison urges that his appeal of the district court's refusal to hold an

---

[21] *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014).

[22] *Abney v. United States*, 431 U.S. 651, 656 (1977).

[23] *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006).

[24] *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (citation omitted).

[25] *Keele*, 755 F.3d at 754.

evidentiary hearing on his motion to withdraw is derivative of his claims that his plea was involuntary and that he received ineffective assistance of counsel. We agree, and we have previously allowed appeals despite similar waivers of appeal where defendants have asserted claims of coercion and ineffective assistance of counsel.[26] Therefore, Harrison may raise his challenge to the district court's refusal to hold an evidentiary hearing on his motion to withdraw.

## III.

A criminal defendant does not have an absolute right to withdraw a guilty plea.[27] Rather, a defendant may withdraw a guilty plea after the court has accepted it, but prior to sentencing, only if he "can show a fair and just reason for requesting the withdrawal."[28] In determining whether a defendant has shown a fair and just reason, the Fifth Circuit applies the seven-factor test set forth in *United States v. Carr*.[29] A district court must consider whether: (1) the defendant asserted his innocence; (2) withdrawal would cause the government to suffer prejudice; (3) the defendant delayed in filing the motion; (4) withdrawal would substantially inconvenience the court; (5) close assistance of counsel was available; (6) the original plea was knowing and voluntary; and (7) withdrawal would waste judicial resources.[30] A district court need not make findings as to each factor, but should make its decision based

---

[26] *See United States v. Ray*, 543 F. App'x 469, 469-70 (5th Cir. 2013) (unpublished) (allowing appeal where defendant asserted involuntariness of waiver); *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995) (allowing appeal where defendant asserted ineffective assistance of counsel).

[27] *United States v. Lampazianie*, 251 F.3d 519, 523-24 (5th Cir. 2001).

[28] FED. R. CRIM. PRO. 11(d)(2)(B); *see Matthew v. Johnson*, 201 F.3d 353, 366 (5th Cir. 2000) (noting that when a defendant "state[s] at his hearing that his plea [is] freely and voluntarily made, and that he underst[ands] the nature of the charges against him and the nature of the constitutional rights he [is] waiving[, t]hese statements act to create a presumption that in fact the plea is valid").

[29] 740 F.2d 339, 343-44 (5th Cir. 1984).

[30] *Id.*

on "the totality of the circumstances."[31] The court should also consider, where applicable, the reasons why defenses advanced later were not proffered at the time of the original pleading and the reasons why a defendant delayed in making his withdrawal motion.[32] Finally, the burden of establishing a fair and just reason for requesting withdrawal under *Carr* "rests with the defendant."[33]

Neither is a criminal defendant automatically entitled to an evidentiary hearing on a motion to withdraw his guilty plea.[34] "A hearing is required," however, "when the defendant alleges sufficient facts which, if proven, would justify relief [under *Carr*]."[35] We review a district court's decision not to hold an evidentiary hearing for abuse of discretion.[36] "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence."[37]

## IV.

Although Harrison made several allegations in support of his withdrawal motion, we cannot conclude, even if all were proven to be true, that "the totality of the *Carr* factors [would] clearly tip in [Harrison's] favor to justify relief."[38] The district court therefore did not abuse its discretion in declining to hold an evidentiary hearing.

## A.

Harrison made three factual allegations relevant here. First, he asserted his actual innocence, which implicates *Carr*'s first factor. He alleged, five

---

[31] *United States v. Hughes*, 726 F.3d 656, 662 (5th Cir. 2013) (citation omitted).

[32] *Carr*, 740 F.2d at 344.

[33] *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998) (citation omitted).

[34] *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003).

[35] *Id.* (citation omitted).

[36] *Id.*

[37] *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014) (internal quotation marks and citation omitted).

[38] *See Powell*, 354 F.3d at 371.

weeks after entering his guilty plea, that he had no involvement in the scheme. As the district court correctly noted in its order denying Harrison's initial withdrawal motion, a defendant's assertion of actual innocence alone, without supporting evidence, is insufficient to warrant allowing withdrawal under *Carr*.[39] In response, six weeks later and eleven weeks after entering his guilty plea, Harrison filed a motion to reconsider and attached two statements, one from a codefendant indicating that Harrison "did not participate nor did he gain financially in any way" from the scheme,[40] and one from Harrison's sister indicating that Harrison had resigned from TOTR before the scheme took place.[41] Harrison also attached a sworn affidavit refuting the facts contained in the factual resume he signed and indicating he had no involvement with the scheme.

The statement from Harrison's codefendant merely asserts Harrison's innocence of the charge to which Harrison pled guilty. Like Harrison's initial assertion, this claim alone would not suffice to overturn the district court's reasoned denial of his withdrawal motion. "Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right."[42]

Neither would the statement from Harrison's sister suffice. Notably, it does not indicate that Harrison did not participate in the scheme. It indicates only that Harrison "did not have access to the building [or] office at [TOTR]"

---

[39] *United States v. Bond*, 87 F.3d 695, 701 (5th Cir. 1996) ("[A] contrary rule would grant the defendant an [i]nappropriate ability to reverse his decision to plead guilty."); *see United States v. London*, 568 F.3d 553, 563 (5th Cir. 2009) (finding no error in denying a withdrawal motion under *Carr* where the defendant "blankly asserted his innocence, providing no facts to support [his] change of heart").

[40] This first unsworn statement reads, in its totality: "To Whom It May Concern: Emanuel Harrison did not participate nor did he gain financially in any way in the scheme that occurred in 2009 at Tax on the Run. Fread Jenkins [signature]." R. at 362.

[41] *Id.* at 362-63.

[42] *United States v. Carr*, 740 F.2d 339, 344 (5th Cir. 1984).

during the time the scheme took place. This allegation, even if proven, would not be inconsistent with Harrison's guilt. Harrison could have knowingly participated in the scheme even having resigned from his position with TOTR and having been without access to the TOTR facilities. Harrison's PSR details, inter alia, that he met taxpayer-clients in the parking lot of TOTR or in other parking lots, drove them to check cashing locations or followed in a separate vehicle, and kept files and documents related to the scheme in his car.[43] None of these actions would require TOTR's employment of Harrison or Harrison's access to the TOTR facilities.

Neither would Harrison's own sworn affidavit suffice. The allegations he makes add little to his assertion of innocence beyond reiterating his claim and denying the veracity of the factual resume he signed in conjunction with his plea agreement. Granted, if proven to be true, these allegations would lend support to Harrison's assertion. But even so, we cannot conclude under the totality of the *Carr* factors discussed herein that the district court erred in determining that Harrison had not met his burden.

### B.

Second, Harrison asserted his plea was involuntary due to the coercive nature of the plea bargaining process, which implicates *Carr*'s sixth factor. He alleged for the first time in a statement at his sentencing hearing that he was pressured to agree to a package plea deal that would spare his brothers from the possibility of receiving longer sentences. We must take "special care" in reviewing the voluntariness of "guilty pleas made in consideration of lenient

---

[43] R. at 376-77.

treatment as against third persons,"[44] often referred to as "package" plea deals.[45] But there is no indication that such a bargain existed here.

Harrison offers no elaboration or discussion of this allegation on appeal other than to quote at length from the transcript of his sentencing hearing and to vaguely refer to "the conditions of the plea bargain agreement."[46] Having scoured the record and the transcripts of Harrison's plea colloquy and sentencing hearing, we find absolutely no evidence supporting the existence of such a condition, much less the existence of coercion. Harrison and his counsel signed a plea agreement that did not contain a bilateral condition regarding his codefendant brothers, nor did it make any mention of his codefendants. Harrison and his counsel then signed a plea agreement supplement indicating that there were no additional terms to his plea agreement. When asked by the district court during his rearraignment whether he was pleading guilty "freely and voluntarily" and whether anyone had "tried to force [him] or threaten [him] or coerce [him] in any way," Harrison declared—under oath—in open court that he had not been coerced, that he was pleading guilty voluntarily, and that he was fully informed of the rights he was waiving.[47] Again, even if we were to go against all of the available evidence and count as true Harrison's vague assertion, we cannot conclude that it tips the totality of the *Carr* factors in Harrison's favor.

---

[44] *See United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979) (internal quotation marks and citation omitted).

[45] *See United States v. Lampazianie*, 251 F.3d 519, 523 (5th Cir. 2001).

[46] Appellant's Brief at 8, 10.

[47] R. at 310-12. "Solemn declarations in open court carry a strong presumption of verity." *Lampazianie*, 251 F.3d at 524 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

No. 14-10078

C.

Third, Harrison asserted a claim of ineffective assistance of counsel, which implicates *Carr*'s fifth factor. He alleged that counsel erroneously advised him to enter the plea agreement because counsel suggested he would be prejudiced by a prior sexual assault conviction. He also alleged that counsel did not investigate or discover certain exonerating evidence related to "the true identi[ty] of Chris Smith," presumably referring to one of the aliases listed for Harrison in the indictments. Although Harrison alleged he had forwarded exonerating evidence "to the [g]overnment," the record contains no evidence in support of this allegation. Harrison submits no legal standard, no facts, and no discussion regarding these arguments on appeal. He has therefore waived them.[48] But even counting Harrison's factual allegations as true, and assuming he had articulated a claim of ineffective assistance of counsel under the appropriate standard set out in *Strickland v. Washington*,[49] we cannot conclude—in light of the record and *Strickland*'s high bar[50]—that Harrison would have satisfied his burden under *Carr*.

---

[48] *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.") (citing FED. R. APP. P. 28(a)(9)(A)) (other citations omitted).

[49] 466 U.S. 668 (1984). In his brief on appeal, Harrison does not mention *Strickland* or any of *Strickland*'s progeny.

[50] *Id.* at 687 ("A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

No. 14-10078

D.

Finally, relevant to *Carr*'s third factor, Harrison did not file his withdrawal motion until more than five weeks after pleading guilty, and he did not file the three supporting documents attached to his motion to reconsider until six weeks later. Although the district court made no finding regarding *Carr*'s third factor, we cannot conclude that it weighs in Harrison's favor because these motions and documents were not promptly filed.[51]

V.

Based on the foregoing, combined with the findings and reasons stated in the district court's order denying Harrison's initial withdrawal motion, Harrison has not alleged sufficient facts to establish, under the totality of the *Carr* factors, that the district court abused its discretion in declining to hold an evidentiary hearing. We see no legal errors or clearly erroneous factual findings in the district court's decision. AFFIRMED.

---

[51] *Carr*, 740 F.2d at 345 (finding a motion was not promptly filed due to a twenty-two-day delay, and noting that "[t]he rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty").