# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-50801

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Juan Pablo Alcaraz-Juarez,

*Defendant—Appellant*.

————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:22-CR-646-1

————————————————————————

Before Ho, Engelhardt, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Juan Pablo Alcaraz-Juarez (Alcaraz-Juarez) pled guilty and was sentenced pursuant to a one-count indictment charging illegal re-entry following removal in violation of "8 U.S.C. § 1326(a) & (b)(1)/(2)." Alcaraz-Juarez appeals, contending there is a conflict between the oral pronouncement and the written judgment, as well as a clerical error related to the offense of conviction. We agree. For the following reasons, we

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50801

REMAND for the district court to amend the written judgment to conform to the oral pronouncement and correct the clerical error.

## I.   Background

Alcaraz-Juarez is a citizen of Mexico who was previously deported from the United States in November 2020. In March 2022, near Del Rio, Texas, federal law enforcement agents located Alcaraz-Juarez once again in the United States without the permission of the United States Attorney General or the Secretary of the Department of Homeland Security. Alcaraz-Juarez was indicted for illegal re-entry following deportation in violation of § 1326(a), subject to the enhanced penalties under subsections (b)(1)-(2). He pled guilty to the indictment without a plea agreement.

The United States Probation Office filed its presentence investigation report (PSR) thereafter. According to the PSR, Alcaraz-Juarez's offense was "Illegal Re-entry into the United States" in violation of "8 U.S.C. § 1326(a), 8 U.S.C. § 1326(b)(2)," *not* § 1326(b)(1).[1] The PSR based its conclusion on the following facts. In 2006, Alcaraz-Juarez was convicted of possession with intent to distribute less than 50 kilograms of marijuana. He was sentenced to 21 months' imprisonment and 3 years' supervised release. That conviction qualified as a felony offense exceeding a sentence of 1 year and 1 month under U.S.S.G. § 2L1.2(b)(2)(C) and an aggravated felony offense under 8 U.S.C. § 1326(b)(2). Further, the PSR confirmed that Alcaraz-Juarez was previously convicted of illegal re-entry in 2020, which resulted in a sentence of 13 months' imprisonment and 3 years' supervised release. This conviction qualified as a felony illegal reentry offense under U.S.S.G. §

_____

[1] Whereas § 1326(b)(1) subjects an alien to criminal penalties of up to 10 years for removal subsequent to certain misdemeanors and felonies, § 1326(b)(2) provides for enhanced criminal penalties of up to 20 years' imprisonment for an alien "whose removal was subsequent to a conviction for . . . an aggravated felony."

No. 23-50801

2L1.2(b)(1)(A) and an aggravated felony under 8 U.S.C. § 1326(b)(2). The PSR then calculated Alcaraz-Juarez's guideline imprisonment range between 30 and 37 months. Neither Alcaraz-Juarez nor the Government objected to the PSR.

At sentencing, the district court "adopt[ed] the [PSR] and [its] application of the United States Sentencing Guidelines contained in the report," and orally imposed a sentence of 37 months in prison with 3 years of supervised release. The court then imposed the "standard and mandatory conditions of supervision." The parties agree that this pronouncement refers to the Western District of Texas's standing order entitled "Conditions of Probation and Supervised Release."[2] That standing order sets forth two relevant conditions:[3]

> [**Standard Condition No. 8**] The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of *the probation officer*.

> [**Standard Condition No. 16**] If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall not incur any new credit charges or open additional lines of credit without the approval of *the probation officer*, unless the defendant is in compliance with the payment schedule.

---

[2] United States District Court for the Western District of Texas, *Conditions of Probation and Supervised Release* (Nov. 28, 2016), https://www.txwd.uscourts.gov/wp-content/uploads/2022/12/Conditions-of-Probation-and-Supervised-Release.pdf.

[3] *Id.* (emphasis added).

No. 23-50801

The court subsequently entered a written judgment. The written judgment adjudged Alcaraz-Juarez guilty of 8 U.S.C. § 1326, Illegal Re-Entry into the United States, but it did not reference the specific subsections of the offense. The judgment also mandated that the defendant "comply with the mandatory, standard, and if applicable, the special conditions that have been adopted by the court." Under the "Standard Conditions of Supervision," the district court imposed Standard Conditions 8 and 16 but changed the language requiring the permission or approval of the "probation officer" to instead require the permission or approval of "the Court."

Without seeking correction from the district court in the first instance, Alcaraz-Juarez appealed.

## II.    Conflict Between the Oral Pronouncement and Written Judgment

We turn first to the discrepancy between the oral pronouncement and written judgment. When a defendant has no opportunity to object to a particular condition, "we review for abuse of discretion." *United States v. Martinez*, 987 F.3d 432, 434 (5th Cir. 2021). A defendant clearly has no opportunity to object when an alteration to the oral pronouncement appears for the first time in the written judgment. *Id.* at 434–35. After all, "it is hard to see how [Alcaraz-Juarez] could have objected at sentencing to the wording of the condition—the basis of his challenge on appeal—when he did not encounter that wording until he received his written judgment." *United States v. Franklin*, 838 F.3d 564, 567 (5th Cir. 2016) (quoting *United States v. Lomas*, 643 F. App'x 319, 324 (5th Cir. 2016) (per curiam)). As the discrepancy which is the subject of this appeal did not appear until the written judgment, abuse of discretion applies.

"A district court abuses its discretion in imposing a [discretionary] condition of supervised release if the condition in its written judgment

4

conflicts with the condition as stated during its oral pronouncement." *United States v. Pelayo-Zamarripa*, 81 F.4th 456, 459 (5th Cir. 2023) (citation omitted).[4] If the in-court pronouncement actually conflicts with "the judgment that later issues, what the judge said at sentencing controls." *Diggles*, 957 F.3d at 557 (citing *United States v. Kindrick*, 576 F.2d 675, 676–77, 677 n.1 (5th Cir. 1978)). But "not all unpronounced conditions []rise to the level of an actual conflict." *Pelayo-Zamarripa*, 81 F.4th at 459–60. The key to determining whether there is an actual conflict or a mere ambiguity is "whether 'the written judgment broadens the restrictions or requirements of supervised release, or impos[es] a more burdensome requirement than that of the oral pronouncement.'" *Id.* (quoting *United States v. Flores*, 664 F. App'x 395, 398 (5th Cir. 2016) (per curiam)).

Alcaraz-Juarez contends that the written judgment's requirement to seek permission from the court—as opposed to the probation officer—conflicts with the oral pronouncement because it places a higher burden on him than was orally pronounced. The Government asserts there is no conflict because the written judgment merely reflects the reality that the court, not a probation officer, maintains ultimate authority over Alcaraz-Juarez's

_____

[4] The Fifth Amendment's Due Process Clause preserves a defendant's right to be present at sentencing so that he might defend himself against the terms of punishment. *United States v. Diggles*, 957 F.3d 551, 557–58 (5th Cir. 2020) (en banc). To respect this right and permit objections, "the district court must orally pronounce [the] sentence." *Id.* at 556. But not all conditions of supervised release must be pronounced. In *Diggles*, we drew a bright line: Mandatory conditions require no pronouncement as "there is little a defendant can do to defend against [them]," but discretionary conditions, as defined by 18 U.S.C. § 3583(d), must be pronounced "because then the defendant can dispute whether [they are] necessary or what form [they] should take." *Id.* at 558. In short, the court "must orally pronounce conditions that are discretionary under 18 U.S.C. § 3583(d)." *United States v. Garcia*, 983 F.3d 820, 823 (5th Cir. 2020) (citing *Diggles*, 957 F.3d at 559, 563). The parties agree that the conditions at issue are discretionary. We therefore assume this point without deciding it.

conditions. The Government further contends that the written judgment imposes no greater burden upon Alcaraz-Juarez because he could conceivably request permission through his probation officer, who would then seek approval from the court on Alcaraz-Juarez's behalf.

We recently rejected the Government's position in an unpublished—but persuasive—decision. *See United States v. Orozco-Rangel*, No. 23-50587, 2024 WL 3688723, at *2 (5th Cir. Aug. 7, 2024) (per curiam) (finding actual conflict between pronouncement and judgment where the former required permission from a probation officer and the latter from the court). Simply stated, requiring the defendant "to go directly to the court for the required permissions, rather than using a probation officer as an intermediary, 'impos[es] a more burdensome requirement.'" *Id.* (quoting *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006)). Because requiring permission from a probation officer prevents association with felons and new lines of credit in a "less-burdensome manner than" that imposed by the written judgment, there exists a conflict to be remedied on remand. *Bigelow*, 462 F.3d at 384. The written judgment must be conformed to the oral pronouncement. *Id.*

## III.    Clerical Error

Alcaraz-Juarez also contends that there is a clerical error in the written judgment because the judgment references the generic statute of the offense, 8 U.S.C. § 1326, rather than the specific subsection under which he was convicted and sentenced. The Government acknowledges in its brief that we have previously remanded for correction of a clerical error when the written judgment "identifie[d] the statute of conviction as 8 U.S.C. § 1326(a)," but the record indicated that the defendant "was convicted and sentenced pursuant to § 1326(a) and (b)(1)." *United States v. De La Cruz-Arias*, No. 22-11134, 2023 WL 4861772, at *1 (5th Cir. July 31, 2023) (per curiam).

No. 23-50801

Nonetheless, because Alcaraz-Juarez failed to "allege[] any harm or prejudice resulting from the court's referral to the general illegal re-entry statute," the Government maintains we should affirm.[5]

We are unaware of any binding authority *requiring* that a defendant allege harm from a clerical error to secure correction.[6] And the Government

---

[5] The Government also contends that our review is subject to plain error because Alcaraz-Juarez "raises the issue of a clerical error in the judgment for the first time on appeal." But we have "previously reviewed clerical errors for the first time on appeal and properly remanded for correction of the errors without resolving the standard of review." *United States v. Podio*, 672 F. App'x 487, 488 (5th Cir. 2017) (per curiam) (collecting cases). Because the Government offers no reason to alter this practice, we proceed in that fashion here as well.

[6] We have, at times, explained the harm that may come of a failure to correct a clerical error. For example, in *United States v. Huerta-Rodriguez*, we explained that reformation of a judgment to list § 1326(b)(1) instead of § 1326 generally was necessary because "implying that a defendant's past crime was an aggravated felony rather than a felony 'could have collateral consequences' . . . even when, as here the alleged error . . . did not affect the sentence." 64 F.4th 270, 276 (5th Cir. 2023) (quoting *United States v. Ovalle-Garcia*, 868 F.3d 313, 314 (5th Cir. 2017)). And, in *United States v. Mackay*, 757 F.3d 195, 200 (5th Cir. 2014), we required the district court to correct a clerical error in a PSR, concluding error was not harmless "because it affect[ed] Mackay's substantial rights." But we have also concluded clerical errors warranted "simple remand" without any discussion of harm. *E.g.*, *United States v. Powell*, 354 F.3d 362, 371–72 (5th Cir. 2003); *United States v. Johnson*, 880 F.3d 226, 236 (5th Cir. 2018). Because the plain language of Rule 36 contains no harm requirement, and our previous opinions do not *require* it, we reject the Government's invitation to impose it here. *See* FED. R. CRIM. P. 36.

While a defendant is not required to demonstrate harm to secure relief, we pause to emphasize the importance of an *accurate* written judgment and discuss some of those "collateral consequences" we alluded to in *Huerta-Rodriguez*. The sentencing court's written judgment sets in motion and influences a host of decisions made for the defendant once committed to the custody of the Bureau of Prisons (BOP). The "BOP is charged with interpreting and administering the provisions of the [judgment]" in a variety of ways, including, *inter alia*, calculating federal terms of imprisonment, determining the commencement of a term of imprisonment and credit for prior custody, and collecting fines imposed by the judgment. U.S. Dep't of Justice, Federal Bureau of Prisons, *Legal Resource Guide to The Federal Bureau of Prisons* (2019), https://www.bop.gov/resources/pdfs/legal_guide_march_2019.pdf. Much like the PSR,

7

provides none. Without reference to harm, Fed. R. Crim. P. 36 provides that the court "may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." The rule authorizes us to correct "clerical errors, which exist when 'the court intended one thing but by merely clerical mistake or oversight did another.'" *United States v. Buendia-Rangel*, 553 F.3d 378, 379 (5th Cir. 2008) (quoting *United States v. Steen*, 55 F.3d 1022, 1025–26 n.3 (5th Cir. 1995)). Rule 36 is a "limited tool[] meant only to correct 'mindless and mechanistic mistakes.'" *United States v. Ramirez-Gonzal*ez, 840 F.3d 240, 247 (5th Cir. 2016) (quoting *Mackay*, 757 F.3d at 200). It applies only when "an issue was actually litigated and decided but was incorrectly recorded in or inadvertently omitted from the judgment." *Id.* (citation omitted).

As we explained in *Orozco-Rangel*, "our court has repeatedly"— often without discussion of harm or prejudice to the defendant—"remanded for the limited purpose of specifying the precise sections or subsections of conviction." 2024 WL 3688723, at *2 & n.2 (collecting cases); *see also United States v. Mendoza Soto*, 743 F. App'x 550, 551 (5th Cir. 2018) (per curiam) ("[T]he case is remanded pursuant to Federal Rule of Criminal 36 for the limited purpose of correcting the clerical error in the judgment to reflect that [defendant-appellant] was convicted and sentenced under § 1326(a) and

---

which follows the defendant, "serv[ing] as a source of information beyond its use in the treatment and supervision of the offender," the judgment serves as the primary document to which the BOP refers in administering the sentence imposed. *Mackay*, 757 F.3d at 198 n.1 (quoting Stephen A. Fennell & William N. Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L. Rev. 1615, 1628 (1980)). For these reasons, it is imperative that the written judgment accurately reflect the aspects of the sentence imposed, irrespective of the defendant's ability to articulate the potential harm that may ensue as a result of the error.

(b)(2), rather than § 1326."). We see no reason to depart from that practice here.

Alcaraz-Juarez pled guilty to the indictment, which charged illegal re-entry under "§ 1326(a) & (b)(1)/(2)." At sentencing, the district court adopted the PSR, which indicated that Alcaraz-Juarez's offense was illegal re-entry under "8 U.S.C. § 1326(a), § 1326(b)(2)." The written judgment cites only the generic illegal re-entry statute, 8 U.S.C. § 1326, without reference to any subsections. Because the written judgment fails to clarify the subsection pursuant to which Alcaraz-Juarez was convicted and sentenced, we "follow the lead of those prior panels and remand for the district court to correct the judgment by specifying the exact section of conviction." *Orozco-Rangel*, 2024 WL 3688723, at *2.

## IV.  Conclusion

For the foregoing reasons, we REMAND for the district court to amend the written judgment to conform to the oral pronouncement and correct the clerical error in the written judgment so that it accurately reflects the specific statutory provision of which Alcaraz-Juarez was convicted and sentenced.